ALBERT H. WALKER vs. JOSEPH R. HAWLEY AND OTHERS.

Hartford Dist., Oct. T., 1888.  PARK, C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, Js.

The defendants published of the plaintiff in a political journal conducted by them, the following:—"This part of the state was especially favored by the democratic state committee by the wholesale circulation of the remarkable letter of Albert H. Walker, giving his so-called reasons for falsely asserting that Mr. Lounsbury's nomination was secured by corrupt means." Held that the words "falsely asserted" were to be construed in connection with the subject to which they relate, the published letter of W. giving his reasons for his conclusion, and not as an attack upon his personal veracity; and that they were therefore not libelous.

[Argued October 4th—decided December 14th, 1888.]

ACTION for a libel; brought to the Superior Court in Hartford County.  The defendants, under the name of Hawley, Goodrich & Company, owned and conducted a newspaper in the city of Hartford, in which the matter charged as libelous was published.

The complaint was as follows:

1. That on the fourth day of November, 1886, the defendants published and caused to be published, in a newspaper called the *Hartford Courant*, the following words concerning the plaintiff: "The people of Fairfield County attested their appreciation of Mr. Lounsbury by their votes. This part of the state was especially favored by the Democratic state committee by the wholesale circulation of the

remarkable letter of Albert H. Walker, giving his so-called reasons for falsely asserting that Mr. Lounsbury's nomination was secured by corrupt means. As a result, the usual Democratic majority of the county was reversed: the Republicans elected three of the four senators from the county, and twenty-one of the thirty-two representatives. This is the verdict of Mr. Lounsbury's county. The voters of his own town, with only 470 votes, gave him a majority of 266. If other parts of the state had been as liberally supplied with the same literature, it is possible the election for governor would have been by popular vote."

2. That the defendants meant thereby that the plaintiff had falsely asserted that the nomination of Phineas C. Lounsbury for governor of Connecticut was secured by corrupt means; and the defendants also meant thereby that the returns of the election held in Connecticut for state officers on November 2d, 1886, showed that the plaintiff's pamphlet of September 25th, 1886, on the nomination of Phineas C. Lounsbury, was disbelieved wherever it was read.

3. Such publication was false and malicious.

The defendants demurred to the complaint on the ground that the matter was not libelous. The demurrer was over-ruled and the defendants answered over. Their answer and the plaintiff's reply thereto are sufficiently stated in the opinion. On the issue of fact thus made the case was tried to the jury before *Phelps, J.* The plaintiff having introduced all his evidence, the defendants moved for a nonsuit, which was granted by the court; and a motion to set aside the nonsuit having been denied by the court, the plaintiff appealed to this court.

*A. H. Walker*, appellant, *pro se.*

1. The language complained of, namely, " the remarkable letter of Albert H. Walker, giving his so-called reasons for falsely asserting that Mr. Lounsbury's nomination was secured by corrupt means," is accurately interpreted in the innuendo, namely : " The defendants meant thereby that the plaintiff had falsely asserted that the nomination of Phineas

C. Lounsbury for governor of Connecticut was secured by corrupt means." This accuracy results from the fact that every point expressed in the innuendo is also expressed in the language complained of, except the point that the Mr. Lounsbury referred to in the letter was Phineas C. Lounsbury, and except the point that his nomination was for governor of Connecticut; and from the fact that both of these points are substantially admitted in the defendants' answer. This accuracy is not negatived by the fact that the innuendo ignores the phrase "giving his so-called reasons." The phrase "falsely asserting" is not modified by that phrase, because men give so-called reasons for positive assertions as well as for argumentative assertions; and because, therefore, the reference to "so-called reasons" does not show or indicate that the phrase "falsely asserting" charged only an argumentative false assertion and not a positive false assertion. Therefore the phrase "falsely asserting" must be held to carry its common primary meaning of "deceitfully affirming positively," and cannot logically be softened into any such phrase as "erroneously maintaining," or "illogically arguing." Nor can the accuracy of the innuendo be negatived by reference to the character of the plaintiff's pamphlet, because that pamphlet was never published by the defendants, and was not known to many of those to whom the defendants distributed the language complained of. It would be illogical to make the determination of the message which was conveyed by the document which the defendants published, depend upon the character of another document which they never published, and never explained to their readers in any way.

2. The statement which was published by the defendants, and which is thus accurately set forth in the innuendo, was libelous, because it expressly charged the plaintiff with falsely asserting that the nomination of Mr. Lounsbury was secured by corrupt means. The defendants' answer does not plead that their charge was true, and they thereby legally admit that their charge was false. *Swift* v. *Dickerman*, 31 Conn., 291; *Donaghue* v. *Gaffy*, 53 id., 52. That a false

accusation of falsehood is libelous *per se*, is a proposition of law which is as well founded as any part of the law of libel. Civilization is largely based on confidence, and confidence is based on reputation for veracity. Reputation for lack of veracity is fatal to confidence, and exiles him who has it from many of the principal benefits of civilization. It follows that whoever publishes a false accusation of falsehood in another, thereby delivers a blow which must be injurious to the reputation of that other for veracity, and must tend to deprive him of a considerable part of the value of living. To redress such injuries is the main reason for having any law of libel. Another reason for having a law of libel resides in the fact that libels are likely to produce breaches of the peace, and therefore require restraint. It is well known that false accusations of falsehood have an exceptionally strong tendency to produce breaches of the peace. If the law afforded no remedy for such an accusation, the number of such breaches of the peace would be much increased, because many more men of spirit and honor, if denied protection by the law from such accusations, would endeavor to protect themselves. As a matter of reasoning from principle and from public policy, therefore, the libelous character *per se* of a false accusation of falsehood stops not short of demonstration. The authorities also abundantly establish the same proposition of law. *Lindley* v. *Horton*, 27 Conn., 58; *Cooper* v. *Stone*, 24 Wend., 441; *Clark* v. *Binney*, 2 Pick., 113; *Shelton* v. *Nance*, 7 B. Monr., 128; *Woodburn* v. *Miller*, Cheeves's Law Cases, 194; *Brooks* v. *Bemiss*, 8 Johns., 356; *Over* v. *Hildebrand*, 92 Ind., 22; *Hake* v. *Brames*, 95 id., 161; Townshend on Slander & Libel, sec. 177.

3. The statement thus published, and thus libelous, was not privileged. This follows from the fact that the publication was not made in good faith, and was not made without malice; and because both these points are necessary elements in any defense of privilege. That good faith is a necessary element of a privileged publication is undeniable. The reason of the law of privilege relevant to publications which would be libelous if not privileged, resides in the oc-

casional propriety of publishing statements which cannot be positively proved. But it is never proper to publish an injurious statement which the publisher does not himself, according to his lights, believe to be true. Therefore the reason for a privilege does not exist where the publication complained of cannot reasonably be believed to be true by the publisher when he puts it forth. Accordingly, all the known authorities upon the point hold that good faith is an indispensable element of a privileged communication or publication. *Dawkins* v. *Lord Paulet*, L. R., 5 Q. B., 102; *Simmonds* v. *Dunne*, 5 Irish R., C. L. Series, 362; *Turnbull* v. *Bird*, 2 Fost. & F., 524; *Cooper* v. *Stone*, 24 Wend., 442; *Gassett* v. *Gilbert*, 6 Gray, 94; Folkard's Starkie on Slander, §§ 673, 679; Odgers on Libel & Slander, 198, 199; Townshend on Slander & Libel, § 288; and numerous cases cited in those precedents and text-books. That malice in fact is fatal to any claim of privilege, is also an undisputed rule of the law of libel. *Clark* v. *Molyneux*, L. R., 3 Q. B. Div., 246; *Elam* v. *Badger*, 23 Ill., 501; *Austin* v. *Remington*, 46 Conn., 118; 3 Greenl. Ev., § 168; Odgers on Libel & Slander, 267. Want of good faith in publishing that "the plaintiff had falsely asserted that the nomination of Phineas C. Lounsbury for governor of Connecticut was secured by corrupt means," is shown in several ways in the record. Malice is proved in this case to have been entertained against the plaintiff, not only by the expressed threat of one of the defendants; but in four other legally recognized ways besides. The defense of privilege is not only negatived by proof of the presence of malice and the absence of good faith; but it is also inherently invalid because of the *prima facie* unsoundness of the grounds upon which it is apparently based. Those grounds are three in number: 1. The publication complained of was a literary criticism of a literary production. 2. It was a reply to a charge. 3. It was a "political" comment on a "political" pamphlet and a "political" campaign. The first of these grounds is unsound, because the publication complained of had not the qualities of a literary criticism, or any criticism

of a literary production. A criticism of a literary production must contain some account of the statements or opinions set forth therein, and of the assertions and reasonings by which the author attempts to maintain them. But the publication complained of did neither of these things. It merely ascribed to the author a particular statement of fact which he did not make, and then denounced that statement as false, and omitted to quote or otherwise represent any one of the statements of fact or lines of reasoning that were really contained in the production to which it referred. The second of these grounds is unsound, because, at the time of the publication complained of, the plaintiff had not charged either of the defendants with any wrong doing, and because the privilege of replying to charges of misconduct, without incurring responsibility for whatever error may be embodied in the reply, is the privilege of the person thus charged, given to him by the law, as an implement of self vindication. *Steele* v. *Southwick*, 9 Johns., 214; *Colby* v. *Reynolds*, 6 Verm., 495. And though in one English case, *Regina* v. *Veley*, 4 Fost. & F., 1117, this privilege was extended to an attorney who replied for his client to charges made against the latter, the privilege has probably never been awarded to one who voluntarily interfered in a controversy to which he was not a party. The third of these grounds of privilege is unsound, because it amounts to the proposition that defamatory falsehood about the political conduct of private citizens is privileged in law; though such falsehood about the business conduct of such citizens would undeniably be libelous. But politics is the largest and noblest of businesses. It is not degraded from that high estate because bribery and intrigue so permeate it at present; any more than life insurance is degraded from its essentially high position by the recent frauds and defalcations which have assailed it in Connecticut. It may not be possible for human power to estimate the comparative guilt of a variety of falsehoods; but human eyes are adequate to see that the practical evil of falsehoods, other elements being equal, is proportionate to the importance of the subjects to which they respectively

refer. Political falsehoods refer to exceptionally important subjects, and therefore they are exceptionally evil. He who is guilty of a political falsehood is therefore chargeable with an exceptionally evil and injurious sort of mendacity, and those who falsely accuse a fellow-citizen of political falsehood, are chargeable with an exceptionally evil and injurous kind of libel. That is precisely the position of the defendants at the bar.

*A. F. Eggleston*, for the appellees.

CARPENTER, J. This is an action for a libel. The complaint was demurred to in the Superior Court, and the demurrer was overruled. The defendants answered over, admitting the publication of the article alleged to be a libel, denied the *innuendo*, and alleged that they were the publishers of a newspaper which supported Mr. Lounsbury as a candidate for governor in 1886, that the plaintiff opposed his election and wrote and circulated a political pamphlet referred to as " the remarkable letter of Albert H. Walker," that the article mentioned in the complaint was published by the defendants as editors of a public journal immediately after the result of the election was known, in good faith and without malice, for the purpose of calling attention to said pamphlet as a matter of public interest; also that said article was a criticism on a literary effort of the plaintiff, which had been publicly and freely circulated, and that the defendants did not intend to, and did not, refer to the plaintiff otherwise than as a political supporter of a political claim, and as being connected with said pamphlet as its author, and did not intend to, and did not, comment on or attack the plaintiff's personal veracity, his private character, or his private motives in publishing said pamphlet.

The plaintiff's replication admitted that the defendants were publishers of a newspaper, that he opposed the election of Mr. Lounsbury, wrote the pamphlet, etc.; and the rest of the answer was denied. On the issue thus closed the case went to a jury. After the plaintiff had presented his

testimony he was nonsuited. A motion was made to set aside the nonsuit, which was refused. The plaintiff then appealed to this court.

Was the article in question a libel, when considered in the light of the circumstances disclosed by the evidence?

The clause principally relied on as libelous is the following:—"the remarkable letter of Albert H. Walker, giving his so-called reasons for falsely asserting that Mr. Lounsbury's nomination was secured by corrupt means." That clause must be interpreted with reference to the subject matter to which it relates—the letter or pamphlet of Mr. Walker. If that document had asserted *as a fact* that Mr. Lounsbury's nomination was secured by corrupt means, the language quoted might have been interpreted as imputing to Mr. Walker a wilful falsehood. But a false assertion, in logic, ordinarily has a somewhat modified meaning. To say of a man that he reasons from false premises, or draws false conclusions from correct premises, is not libelous. In such cases the word "false" means no more than that the premises were not true, or that the conclusion was erroneous. So also, to say of an advocate before a jury that he falsely asserted the guilt or innocence of the accused, that he falsely maintained the affirmative or negative of the issue, is not libelous, inasmuch as it means simply a mistaken view as to the effect of the evidence. Mr. Walker's position in the case before us was like that of an advocate. He had before him certain evidence, from which he vigorously maintained the proposition, according to his belief, that " the nomination of Phineas C. Lounsbury for governor of Connecticut was accomplished by payments and promises which were of the nature of bribery." He did not assert as a fact that his nomination was so accomplished, but that that was his belief—that the facts and circumstances *convinced him* that it was so. The plaintiff himself (for another purpose) takes the same view. In his brief he says,—" Precisely what the plaintiff did was to publish a large number of facts, not one of which appears to ever have been contradicted anywhere by anybody, and to state that those facts had convinced him

that the nomination of Phineas C. Lounsbury for governor of Connecticut was accomplished by payments and promises which were of the nature of bribery. The plaintiff does not appear to have stated in any way at any time that Mr. Lounsbury's nomination was thus accomplished. Whether or not he would have been justified in making that statement, he appears to have publicly printed that he did not know it to be the fact. His pamphlet on the nomination of Phineas C. Lounsbury consisted of a perfectly justifiable publication of undenied and undeniable facts, relevant to matters of great public importance, and a calm and careful statement of his opinion of the significance of those facts. Whether that opinion was logically drawn from those facts, is a question upon which every reader of that pamphlet was impliedly advised to judge for himself."

This aptly and justly characterizes the pamphlet as an argument sustaining his proposition ; and it is clearly referred to as such in the alleged libelous article,—" *giving his so-called reasons* for falsely asserting that Mr. Lounsbury's nomination was secured by corrupt means."

The words " falsely asserting " then, when taken in connection with the subject matter to which they relate, mean no more than that the proposition which he attempted to prove was a false one; that is, that the conclusion or inference which he drew was not justified by the facts.

That use of the two words is allowable. The second definition given by Webster of the word " assert" is—" to maintain or defend by words or measures; to vindicate." And the fifth meaning of the word " false " is—" not well founded, not firm or trustworthy, erroneous ; as a false claim ; a false conclusion ; a false construction in grammar."

That view of the case leads us to adopt the conclusion so well expressed in the concluding paragraph of the defendants' answer—that they " did not intend to, and did not, refer to the plaintiff otherwise than as a political supporter of a political claim, * * * and did not intend to, and did not, comment on or attack the plaintiff's personal veracity, his private character, or his private motives in publishing said

pamphlet; but simply intended to, and did, in said article make a political comment upon the result of a political campaign, as connected with the declaration contained in said pamphlet."

Thus considered, the questions of good faith and malice are eliminated from the case. It must not be understood however that we regard the evidence as evincing any want of good faith, or as showing actual malice. We simply say that we have no occasion to consider those questions.

There was no error in refusing to set aside the nonsuit.

In this opinion the other judges concurred.