D. W. LEONARD, Appellant, v. LOUIS P. ROBERGE, Respondent.

(186 N. W. 252.)

**Libel and slander — language held not libelous per se.**

· The defendant in answering a newspaper article published by the plaintiff of and concerning the defendant said inter alia that the plaintiff "tells falsehoods in that he says he does things in all fairness." *Held* that these words must be construed in connection with the subject to which they relate, and in light of the undisputed facts and circumstances, and that when so construed they are not libelous per se.

Opinion filed Dec. 30, 1921.

From a judgment of the district court of Rolette County, *Kneeshaw,* J., plaintiff appeals.

Affirmed.

*Fred E. Harris,* for appellant.

Special damages need not be alleged where article is libelous per se. R. C. L. Vol. 17 p. 264; Morse v. Times-Republican Printing Co. 100 N. W. 867.

To publish that a man is a liar or that he utters falsehoods is libelous per se. Cyc. Vol. 25 at p. 255; 17 R. C. L. 289; Prewitt v. Wilson, 103 N. W. 365, (Iowa) ; Morgan v. Andrews, 64 N. W. 869, (Mich.) ; Sanford v. Rowley, 52 N. W. 1119, (Mich.) ; Trebby v. Transcript Pub. Co. 76 N. W. 961, (Minn.) ; Munson v. Eathrop et al., 71 N. W. 596, (Wis.) ; Candrian v. Miller, 73 N. W. 1004, (Wis.) ; Holston v. Boyle et al., 49 N. W. 203, (Minn.).

"Publications calculated to expose one to public contempt or ridicule are libelous, although they involve no imputation of crime, and are actionable without a special allegation of damages." Morse v. Times-Republican Printing Co. 100 N. W. 867, (Iowa) ; Peterson v. Western Union Telegraph Co. 167 N. W. 646, (Minn.) ; Byram v. Aiken, et al, 67 N. W. 87 (Minn.) ; Sheibley v. Huse, 106 N. W. 1028 (Neb.)

*Verret & Stormon,* for the respondent.

"In actions of slander for words not in themselves actionable, the right to recover depends upon the question whether they caused special damage, and the special damage must be fully and accurately stated." Sutherland Code Pleading & Practice, Vol. 3 p. 2389, § 3954.

Special damages must be alleged "where the defamation is of such a character that the court cannot see that its tendency and effect would be to defame or degrade the plaintiff or to render him odious or contemptible." 18 Am. & Eng. Enc. of Law, 867; 25 Cyc. 453-454 and 455.

CHRISTIANSON, J. This is an action for libel. The complaint alleges that the plaintiff is and for a long time has been a resident of the village of Rolette, in Rolette county, in this state; that the defendant caused to be published of and concerning the plaintiff the following statements in the Rolette Record, a newspaper of general circulation published in said village of Rolette, to wit: In the January 28, 1921, issue of said newspaper:

"In looking over the bills for hauling gravel that were presented to the board of county commissioners, for their approval, I was surprised to see that Mr. D. W. Leonard was paid at the rate of $1.50 per yard while on my bill for the same kind of work, it was not stated at what rate I was paid. The fact is that when Mr. Seltum engaged me for this work, I was told that $1.00 per yard was what he was paying every one for hauling gravel; my loads were hauled further than Mr. Leonard's and still I got $.50 less a yard. It seems to me that either Mr. Seltum must have 'forgot' when he told me that price, or else he had one price for I. V. A. haulers and another price for N. P. L. haulers; besides there the gravel I hauled for the county was needed, and was put in a grade where it would better the road, there was a great deal hauled in Mr. Seltum's district that did not improve the road—in fact—made it worse for several months to come. What does the average voter think of this way of spending the county funds?

"(Signed) Louis P. Roberge."

And in the February 25, 1921, issue of said newspaper:

"Oh, the article I put in the paper fit D. W. Leonard because he does all the howling and tells falsehoods in that he says he does things with all fairness; well he must say it himself, because nobody else will. D. W. Leonard is a rich enough man to not farm his own land. Of course

he can raise no more than one crop at a time, but he will drive seven miles from his residence in a cold snowstorm and dig in a gravel pit and throw gravel on a hill· where not needed, just to accommodate taxpayers. People are not so foolish as D. W. Leonard thinks, so we will let him howl until John Clark comes to see it.    (Signed) Louis P. Roberge."

The complaint further alleges that the words so published were false and defamatory, and were maliciously published of and concerning the plaintiff for the purpose of injuring his good name and reputation, and that by said publication the plaintiff has been damaged in the sum of $5,000.

The defendant in his answer admitted the publications, but denied the other averments of the complaint. The defendant further alleged that the second statement, namely, the statement published in the February 25, 1921, issue of the Rolette Record was written and caused to be published by the defendant in answer to the following article, which the plaintiff had caused to be published of and concerning the defendant in the February 11, 1921, issue of said newspaper, to wit:

"In an article which appeared in the Rolette Record some time ago, Mr. Louis P. Roberge charges unfairness in payment for hauling gravel. D. W. Leonard and Jake Romanauk hauled gravel with Mr. Roberge. The same amount of gravel Mr. Roberge is charging the county a yard and a half, we are putting on the road for one yard. Why don't Mr. Roberge tell the truth? Should he get paid at all? Mr. Roberge came to us and wanted us to cut down the amount of gravel we were putting on our loads saying Mr. Seltum would never know. How does that sound to the taxpayers? Just because your commissioner could not be in the gravel pit all the time we measured Mr. Roberge's gravel box when he started and told him we were supposed to keep track of the loads and report the amount of gravel hauled which we did with all fairness. Give the devil his dues, and no more. We too pay taxes.

"(Signed)    D. W. Leonard.
    "Jake Romanauk."

Upon the trial the defendant objected to the introduction of any evidence under the complaint on the ground that it failed to state facts sufficient to constitute a cause of action. In a memorandum decision made part of the record on this appeal the trial court says:

"This matter came before the court on an objection to any evidence being introduced on the ground that the complaint did not state facts sufficient to constitute a cause of action, and more particularly on the grounds that the article charged as libelous was not actionable or libelous per se, and no special damages were claimed in the complaint, being really a demurrer to evidence. The court, while being of the opinion that the article in question was not on its face actionable per se, decided to overrule the objection and let the case go to trial, so that all the facts could come out on the trial and would then be in a better position to decide the question, and so informed counsel, but plaintiff's counsel, stated to the court that if the court later in the trial of the case, after hearing the matter, would finally decide that the article was not actionable per se, that he would prefer that the court pass upon the question on the merits now rather than go to trial and eventually do so. The counsel for plaintiff therefore in open court conceded and stipulated that the first publication was not libelous or actionable per se, and that the second article which he claimed was actionable per se was written by defendant in answer or reply to an aritcle written and published by plaintiff himself, and that the article set forth in the answer was a correct copy of the article written and published by plaintiff, and which the second article was an answer to, and further conceded in open court that, under those circumstances, if the court would later on the merits hold the second article not to be actionable per se, he was out of court, as he had not alleged any special damages and could not prove any, and asked the court that, if he would, under all the facts in the case, hold that the second article was not actionable per se, he would prefer the court to so decide the case without taking up the time of a trial, and the court took plaintiff's counsel at his word, and at his request decided the matter without taking the time to try the case. Therefore the decision was based, not on a demurrer to evidence on the pleadings, but on certain stipulations and conceded facts, and was really a decision on the merits on stipulation and conceded facts."

Hence, for the purpose of testing the sufficiency of the complaint, the statement charged to be libelous must be considered in light of the existing circumstances. In other words, the complaint must be construed as though it averred that the plaintiff had caused to be published of and concerning the defendant the statement set forth in the answer (and hereinabove set forth), and that the last statement published by the

defendant of and concerning the plaintiff was in answer to the statement which the plaintiff had caused to be published of and concerning the defendant. See Lynch v. Standard Pub. Co. et al., 51 Utah, 322, 170 Pac. 770. Does the complaint as so construed state a cause of action? That is the question here.

The complaint contained no inducement or innuendo, and no special damages are claimed. The plaintiff contends that the last statement published contains language which is libelous per se. And he concedes that if the language is not libelous per se, the complaint is insufficient and the ruling of the trial court correct. The sole contention of the plaintiff is that the words in the last statement published by the defendant, to the effect that the plaintiff "tells falsehoods," are libelous per se, and that consequently injury is presumed to have resulted from the publication. "Libel is a false and unprivileged publication by writing, printing, picture, effigy or other fixed representation to the eye which exposes any person to hatred, contempt, ridicule or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." § 4352, C. L. 1913."

It is well settled that in arriving at the sense in which alleged defamatory language is employed, it is proper and necessary to consider the circumstances surrounding its publication and the entire language used. 17 R. C. L. p. 313. And that in determining the actionable quality of words claimed to be libelous, the entire writing, including the title or headlines, must be considered. 18 Am. & Eng. Ency. L. 985; 25 Cyc. 357. And particular words or phrases must be construed in connection with the remainder of the article of which they form a part. 18 Am. & Eng. Ency. L. 985; 25 Cyc. 357. The actionable quality of the words is dependant primarily upon the effect which the language complained of was fairly calculated to produce, and would naturally produce, upon the minds of persons of reasonable understanding, discretion, and candor. 18 Am. & Eng. Ency. L. 977. But in arriving at the sense in which the defamatory language is employed it is proper and necessary to consider the circumstances surrounding the publication and the entire language used. McCue v. Equity Co-Op. Pub. Co., 39 N. D. 190, 167 N. W. 225, 229. There is no contention that the publication in question had any tendency to injure the plaintiff in his occupation. In fact his occupation is not even mentioned in the complaint. The question, therefore, is whether it must be said as a matter of law that the publication neces-

rily must have had a tendency to expose the defendant to hatred, contempt, ridicule, or obloquy, or cause him to be shunned or avoided. In our opinion the publication is not susceptible of such interpretation. This is not a case wherein the plaintiff has been charged with being a common liar, or with having made false statements in the course of business or in the discharge of official duties. Nor is it a case where the plaintiff has been exposed to ridicule or obloquy as a result of a charge that he has wilfully falsified facts, incidents, and situations. The alleged libelous statement was contained in an article published by the defendant in answer to an article published by the plaintiff of and concerning the defendant. In his article the plaintiff had said that he did certain things "with all fairness." The defendant countered by saying that the plaintiff "tells falsehoods in that he says he does things with all fairness." No case has been cited where a statement, made in words and under circumstances anything like similar to those here, has been held libelous per se. A somewhat similar question was considered by the Supreme Court of Connecticut in Walker v. Hawley, 56 Conn. 559, 16 Atl. 674. In that case the defendants published of the plaintiff, in a political journal conducted by them the following:

"This part of the state was especially favored by the Democratic state committee by the wholesale circulation of the remarkable letter of Albert H. Walker, giving his so-called reasons for falsely asserting that Mr. Lounsbury's nomination was secured by corrupt means."

And it was contended that the words "falsely asserted" must be interpreted as imputing to the plaintiff a wilful falsehood. The Supreme Court of Connecticut overruled this contention, and held that the words must be construed in connection with the subject to which they related, namely, the letter which the statement purported to answer, and not as an attack upon the personal veracity of the writer of the letter. In its opinion, the court said, in part:

"A false assertion, in logic, ordinarily has a somewhat modified meaning. To say of a man that he reasons from false premises, or draws false conclusions from correct premises, is not libelous. In such cases the word 'false' means no more than that the premises were not true, or that the conclusion was erroneous. So also, to say of an advocate before a jury that he falsely asserted the guilt or innocence of the accused, that he falsely maintained the affirmative or negative of the issue, is not libelous, inasmuch as it means simply a mistaken view as to the effect of

the evidence. * * * The words 'falsely asserting' then, when taken connection with the subject-matter to which they relate, mean no more than that the proposition which he attempted to prove was a false one; that is, that the conclusion or inference which he drew was not justified by the facts."

The alleged libelous words in this case were used in the course of a somewhat heated newspaper controversy. They were used, not as an original assertion, but as an answer to a statement made by the plaintiff. This appears from the article itself. All that a person who read the article in question would learn would be that the plaintiff in a former article had stated that he (the plaintiff) did things with all fairness, and that the defendant denied the correctness of that statement. In our opinion the trial court was correct in holding that the article was not libelous per se.

Judgment affirmed.

BRONSON, BIRDZELL, and ROBINSON, JJ., concur.

GRACE, C. J. (specially concurring). It is clear to my mind that the language alleged to be libelous per se cannot, by the greatest stretch of imagination, be said to be libelous.