## PHILLIPS et al. v. UNION INDEMNITY CO.

Circuit Court of Appeals, Fourth Circuit. October 16, 1928.

No. 2732.

Northcott, Circuit Judge, dissenting.

D. W. Robinson, of Columbia, S. C., for appellants.

E. W. Mullins, of Columbia, S. C. (Nelson & Mullins, of Columbia, S. C., on the brief), for appellee.

Before PARKER and NORTHCOTT, Circuit Judges, and SOPER, District Judge.

SOPER, District Judge. The appeal in this case presents for review the action of the District Court in sustaining a demurrer to a complaint filed in an action of libel. The plaintiffs declared that they conduct an insurance agency in Richmond county, South Carolina, and, until recently, were agents of the defendant company, and on its behalf, wrote insurance, issued policies, and collected premiums. It was customary to retain from the collections certain commissions allowed under the contract of agency and to remit the balance at stated times to the defendant. In the due course of business, the plaintiffs issued a very considerable number of policies of divers kinds on behalf of the defendant, collected the premiums, and remitted them when due, in accordance with the contract. Nevertheless the defendant canceled the plaintiffs' agency without just cause or excuse, and undertook to cancel many of the policies issued by its authority through the plaintiffs, although the premiums thereon had been duly paid to the plaintiffs and remitted to the company. Furthermore, and this is the gist of the offense, the defendant sent a written notice by mail to the holders of said policies notifying them that their policies were canceled for nonpayment of premiums, and, in some instances, requesting payment of the earned premium. By such notice and attempted cancellation of the policies, it is said by way of innuendo, the defendant intended to convey to the respective policy holders the information and impression that the plaintiffs had not remitted the premiums to the defendant, and were dishonest in their business relations and unworthy of public confidence; and said notices were so understood by the policy holders who received them. The statements and impression thus conveyed were false, libelous, and malicious, and were intended to injure and did injure the plaintiffs in their business standing and reputation. The plaintiffs claim actual and punitive damages in the sum of $100,000. A demurrer to this complaint was sustained by the District Court on the ground that the publication, taken in connection with all the facts and circumstances set forth, is not reasonably susceptible of a libelous meaning, and hence is not actionable. The plaintiffs were given an opportunity to amend their complaint, but declined to do so. Judgment was accordingly entered for the defendant.

We think that the sole question that need be considered is whether this pronouncement of the District Court is correct, for it goes to the heart of the case. It is familiar law that while the office of the innuendo is to connect the defamatory matter with the other facts set out, so as to show the meaning and application of the charge, it cannot enlarge or restrict the natural meaning of the words, or introduce new matter. It cannot be used to give a forced and unnatural construction and application of the words, but only a reasonable and natural construction and application. Wofford v. Press Publishing Co. (C. C. A.) 211 F. 961; Vitagraph Company v. Ford (D. C.) 241 F. 681, 685; Diener v. Star Chronicle Publishing Co., 230 Mo. 613, 132 S. W. 1143, 33 L. R. A. (N. S.) 216. Upon demurrer, it is always within the province of the court to determine whether the innuendo is fairly warranted by the language declared on, when that language is read either by itself or in connection with the colloquium and inducement, if there be a colloquium and inducement set forth. Brinsfield v. Howeth, 107 Md. 278, 284, 68 A. 566, 24 L. R. A. (N. S.) 583. Furthermore, since the injurious character of the publication and the harm

done to the plaintiff depends upon the manner in which the writing is understood by those to whom it is uttered, it must be read and construed in the sense in which the reader would ordinarily understand it; and if, when thus considered, it cannot reasonably be interpreted as defamatory, it will not serve as a basis for the action. Washington Post Co. v. Chaloner, 250 U. S. 290, 39 S. Ct. 448, 63 L. Ed. 987; Baker v. Warner, 231 U. S. 594, 34 S. Ct. 175, 58 L. Ed. 384.

▮ The gravamen of the complaint is that the defendant intended to charge, and did charge the plaintiffs with dishonesty. They say in their brief that the action was brought because the written notice sent to the policy holders tended to impeach the honesty and integrity of the plaintiffs in the conduct of their insurance agency, since it charged them with failing to remit and pay over to their principal premiums collected upon insurance policies. Hence it is clear that they do not rest their case upon a false charge of carelessness or business incapacity or inattention to their duties, but seek to recover damages on the ground that their character for honesty and integrity has been attacked. It is therefore necessary to decide whether, in the light of the circumstances, the policy holder who received such a notice would understand it to have this significance.

It is obvious that the plaintiffs endeavor to combine in one complaint many charges against the defendant, for each notice of cancellation of a policy, if libelous, constitutes a separate cause of action. It is not necessary to decide whether such a complaint is open to the technical objection of duplicity under the South Carolina practice; but it should be borne in mind that the communication sent out by the company must be determined from the viewpoint of the individual recipient. The pleader gives color to the charge by alleging that many notices were sent, but this fact in no wise affects the fundamental question, since each policy holder was notified only of the cancellation of his own policy. He had no knowledge of other policies or other notices of cancellation.

What knowledge did the policy holder have, and what was his state of mind when he received the notice of cancellation of his policy? He knew that the agents had issued to him such a policy, and that he had paid to the agents the premium. He knew from the company's communication that it had canceled his policy, and was demanding payment of a premium of small amount, earned to that date. From these facts it was reasonable for him to infer that the agents had neither remitted the paid premium to the company nor notified the company of its receipt by them. Was it also a reasonable inference that the plaintiffs had not merely failed to remit the premium to the company, but that they were dishonest in the application thereof? Did the policy holder also understand that by its notice of cancellation, which did not mention the agents in any way, the defendant intended to charge them with embezzlement or misappropriation or fraudulent conversion of funds, or some other form of dishonesty? We do not think that such an inference was reasonable under the circumstances. It was of course not impossible for some policy holder, turning over in his mind all the contingencies, to suppose that the agents had improperly retained the premium, but the test is not whether the language can possibly be construed so as to have a defamatory meaning, but whether it is reasonable under the circumstances so to interpret it. To our minds the notice amounted to no more than that the company had received no money on account of the premuim, and no notice that it had been paid.

▮ To go further, and to infer that the company intended to charge the agents with a dishonest withholding of the money would be an unjustified construction. It would be equally, if not more reasonable to suppose that from some cause, a mistake had been made, as for example, a mistake or delay in the mail, sickness, inattention to business or a mistake in bookkeeping either in the office of the agent or of the company. It is true, as the authorities cited show, that when the language used is susceptible of two meanings, one libelous and the other innocent, it must ordinarily be left to the jury to determine in what sense it was used. But neither in a libel case, nor in any other, may a jury be permitted to indulge in mere speculation, unaided by facts, to determine which of several causes may have produced an event. No facts are alleged which tend to show that there was friction between the parties to the cause, or that the most evil of all possible meanings was intended by the defendant. We are aware that it is no defense to show that the libelous statement was published by mistake. Peck v. Tribune Co., 214 U. S. 185, 29 S. Ct. 554, 53 L. Ed. 960, 16 Ann. Cas. 1075. But that defense is not here involved. The demurrer is based on the ground that the complaint does not show that libelous language was used. For these reasons we think that the demurrer was properly sustained. A similar conclusion was reached by the Supreme Court of South

Carolina in Bell v. Clinton Oil Mill, 129 S. C. 242, 124 S. E. 7. The language alleged to be slanderous in that case involved a warning to the plaintiff that his employer, in order to enforce the collection of certain money due to him by the plaintiff, was about to communicate with a bonding company, which was surety on the plaintiff's indemnity bond. The court held, however, that there was no slander involved under the circumstances, because the bond covered not only criminal acts, but also acts which were not criminal, and that therefore the language did not impute to the plaintiff the commission of a crime.

The judgment of the District Court will be affirmed.

NORTHCOTT, Circuit Judge (dissenting). I cannot concur in this opinion because it seems clear to me that, under the facts set up in the complaint, a jury would be justified in finding that the statements made in the defendant's various letters to policy holders were libelous. I am also of the opinion that the language used is susceptible of that interpretation and that the question here involved is one of fact for the jury. The action of the judge below in my opinion should be reversed.