[Civ. No. 10829. Second Appellate District, Division Two.—May 18, 1936.]

WESTERN BROADCAST COMPANY (a Corporation), Respondent, v. THE TIMES–MIRROR COMPANY (a Corporation), Appellant.

Cosgrove & O'Neil, T. B. Cosgrove and Roscoe C. Andrews for Appellant.

Newlin & Ashburn, Allen W. Ashburn, Laurence W. Beilenson and George W. Tackabury for Respondent.

CRAIL, P. J.—This is an appeal from a judgment for damages for libel on the judgment roll alone. The sole question presented for our determination is whether plaintiff's complaint is good against a general demurrer. If it is, the judgment should be affirmed; if not, it should be reversed. Plaintiff is the owner of KNX, one of the largest and most popular radio stations, so powerful in its number of kilowatts that it covers the nine western states of our nation. The Times-Mirror Company is the owner of one of the largest and most influential newspapers in the same area. The occasion of the publication of the alleged libelous article was the controversy arising between said parties over the dropping of the listing

of KNX from the metropolitan papers when the listings of other radio stations continued to be carried.

The plaintiff concedes that no special damages are alleged or prayed for and that the complaint is demurrable under such circumstances unless the article is libelous *per se*. In determining whether the article is libelous *per se* we must consider it in its entirety, and for this reason we have felt obliged to set it forth in full. It is as follows:

"A Plain Statement

"During the past few days The Times has received numerous inquiries from radio listeners asking the reason for the omission of radio listings of Station KNX from the daily 'dials' of this and all other Los Angeles metropolitan newspapers. Inasmuch as many of those so inquiring have obviously been the victims of purposeful misinformation, it is proper and necessary that the facts be made public.

"KNX listings have been omitted from the radio news of the Los Angeles press because that station has consistently refused to cooperate with the newspapers of America, with the national press associations and with other broadcasting stations in the joint endeavor of these agencies to protect the public, themselves and the good name of radio itself through measures to insure that only authentic news from established and thoroughly reliable sources is allowed to go on the air. With this effort Station KNX has not only refused to join; it has publicly ridiculed and attempted to discredit it and its sponsors and participants. It was not until every effort to secure this station's co-operation had been exhausted that the present course was forced upon the newspapers.

"The co-operative effort among all the principal news-broadcasting newspapers, commercial radio stations and national networks and the four great press associations of America to see that only trustworthy and authenticated news is broadcast is directly in line with the expressed desires and policy of the Federal Radio Commission to protect the listening public from irresponsible and often highly damaging broadcasts of wild rumors, 'grapevine' reports and not infrequently purely imaginary 'news'. Prior to the launching of this joint undertaking on March 1 of this year the radio news situation of the country was one of chaos. Listeners, with no means of their own for distinguishing between reliable and unreliable broadcasts, were daily victimized by

garbled, pirated and outright manufactured reports purporting to be truthful news upon the air. An outstanding example of such abuse was the 'exploit' of a Gary (Ind.) radio station, which staged and broadcast as authentic an imaginary battle between the police and a group of escaped convicts, station supernumeraries standing near the microphone and firing revolvers into the air to lend verisimilitude to the flights of the announcer's imagination. Many locally will recall the baseless and needlessly terrifying radio accounts from certain sources of a great tidal wave and other fanciful 'accompaniments' of the Long Beach earthquake, the recent baseless report of the death of Gov. Rolph and similar examples of the need for responsible and authoritative radio news sources.

"To supply that need and at the same time to end the abuse of established news-property rights by unscrupulous and wholesale pirating, the newspapers, press associations and radio broadcasting stations and chains entered into an agreement whereby these recognized news-gathering agencies should supply twice-daily budgets of accurate, authenticated and up-to-the-minute telegraph news to the broadcasting stations, the latter accepting and utilizing them as such.

"Subscribing to this agreement are the Associated Press, the United Press, the International News Service and the Universal Service, every important newspaper in the United States having radio affiliations, every major radio network and, with a very few and scattered exceptions, every major radio station in the entire country.

"Station KNX of Los Angeles is one of these few exceptions. It has been given every opportunity to join in an effort which is obviously in the public interest and in that of radio itself. It has not only refused to do so, but has gone far out of its way to attack and to misrepresent those which have.

"The space which newspapers give to the radio listings of commercial broadcasting stations is a gratis and, to the newspapers, costly contribution to the upbuilding of enterprises conducted for private profit and, from a news and advertising standpoint, in competition with the newspapers themselves. Such a contribution, thus at the newspapers' own triple expense, is justified in the majority of instances because it is also a service to the public. But no fair-minded

person will maintain that the press is obligated to make that contribution where it is deliberately utilized to defeat efforts in the public interest and to malign and traduce the press itself.''

The article is written in plain, non-technical and unambiguous language. Its language must be given the natural and popular construction of the average reader and not the critical analysis of the mind trained in technicalities; and it is the duty of the court to so construe the article in deciding whether it is libelous *per se*. Since a corporation has no character to be affected by libel and no feelings to be injured, an article to be libelous of the corporation must have a tendency to directly affect the credit or property of the corporation or occasion it pecuniary injury. The mere fact that a publication is unpleasant or hostile does not make it defamatory. It has been held in certain cases that it is not libelous *per se* to publish an *answer* challenging the correctness of an opponent's statements and charging such opponent with ''telling falsehoods'' or ''falsely asserting''. (*Leonard* v. *Roberge,* 48 N. D. 638 [186 N. W. 252, 254]; *Walker* v. *Hawley,* 56 Conn. 559 [16 Atl. 674, 675].)

The article begins with the caption: ''A Plain Statement.'' And plaintiff says: ''This would logically infer that what the writer said were statements of fact.'' On the contrary, the entire article shows that it is an argument in rebuttal justifying defendant's refusal to print the logs of KNX. The opening paragraph shows that it is a reply to something that has gone on before, winding up with the conclusion of the defendant (not facts) that ''no fair-minded person will maintain that the press is obligated to make that contribution where it is deliberately utilized to defeat efforts in the public interest and to malign and traduce the press itself''.

The article is largely argumentative and would be so construed by the ordinary reader, and as we have already pointed out, it appears on its face to be a defense against something which has been said over KNX. The article does not charge KNX with giving out misinformation generally nor with having been guilty of any of the acts cited therein as examples for the necessity of a cooperative agreement between the press and the radio stations. It limits its charges, where charges are made, to the particular controversy between the parties and gives its side of the argument in self-

defense. The language, while argumentative, is fairly temperate and restrained.

Space would not warrant us in analyzing the article in detail as the parties have done in their briefs, but we will take up the sentences which plaintiff considers the most damaging. The plaintiff says that two sentences "are among the most damaging in the whole article . . . Certainly no charge could reflect more directly on KNX's business . . . " The sentences are the following: "An outstanding example of such abuse was the 'exploit' of a Gary (Ind.) radio station, which staged and broadcast as authentic an imaginary battle between the police and a group of escaped convicts, station supernumeraries standing near the microphone and firing revolvers into the air to lend verisimilitude to the flights of the announcer's imagination. Many locally will recall the baseless and needlessly terrifying radio accounts from certain sources of a great tidal wave and other fanciful 'accompaniments' of the Long Beach earthquake, the recent baseless report of the death of Gov. Rolph and similar examples of the need for responsible and authoritative radio news sources." The plaintiff contends that these sentences charge KNX with broadcasting baseless and needlessly terrifying radio accounts of a great tidal wave and other fanciful accompaniments of the Long Beach earthquake and of broadcasting false reports of the death of Governor Rolph. No such charges are contained in the language used. These terrifying and baseless reports were merely cited as illustrations for justification of the effort for the cooperative program referred to as the press radio agreement.

The concluding sentence of the article is worthy of some observation. But after all is said this sentence presents the mere conclusion of the defendant with regard to the matter discussed. The defendant is attempting to justify the refusal of metropolitan newspapers to print the KNX listings. because KNX has refused to subscribe to the press radio agreement. Obviously this conclusion is a summary based upon the preceding arguments of the publication. The readers of the article would realize that this conclusion, like every conclusion, is no sounder than the foundation upon which it is based.

The article is not libelous *per se.*

Judgment reversed.

Wood, J., and Gould, J., *pro tem.,* concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 16, 1936.