# LORENTZ v. R. K. O. RADIO PICTURES, Inc.

No. 11076.

Circuit Court of Appeals, Ninth Circuit.

April 22, 1946.

Roth, Brannen & Schwab, of Los Angeles, Cal., for appellant.

Mitchell, Silberberg & Knupp and Guy Knupp, all of Los Angeles, Cal., for appellee.

Before GARRECHT, DENMAN and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

Pare Lorentz entered into a written contract of employment with "R.K.O. Inc.," a corporation, wherein he agreed to act as writer, director and producer in connection with two motion picture photoplays, the production of one thereof to begin within one year after August 1, 1941. The contract provides that Lorentz shall receive as fixed compensation the sum of $50,000, payable at the weekly rate of $1,250 for forty weeks. Should delay occur through the fault of the employer and the production of a picture be incomplete and the $50,000 be consumed, the payment of $1,250 per week as fixed compensation shall continue until the picture is completed, except that such added payments shall not continue for periods beyond the delay in photography caused by R.K.O. The contract further provides that Lorentz shall receive ten per cent of the net profits and credit as producer and director on the screen and in all trade paper advertising issued or controlled by the corporation. All of the above applies as well to the second projected picture; that is, the fixed compensation for the second picture is a repetition of that provided for the first picture and in addition thereto. All of the other benefits apply also.

Article 28, Section 1, of the contract provides for a waiver of benefits by Lorentz in certain described circumstances, and its application controls the issues here as to the judgments, excepting as to Cause 13.

Difficulties arose sometime after Lorentz' services began (August, 1941), which impelled him to institute this action. The United States District Court has jurisdiction of the case because the value of the subject matter involved is $3,000 and more, and there is diversity of citizenship of the parties. A summary judgment resulted in favor of R.K.O. as to four causes of action and a dismissal as to one cause of action. Other causes of action contained in the complaint have not been tried. The causes of action as to which summary judgments were entered may be stated briefly as follows:

(2) For additional fixed compensation which allegedly has accrued for the period it would have taken to complete the first picture.

(10) For recovery of the percentage compensation which the appellant would have earned on the first picture had the corporation not breached its contract.

(11) For recovery of the percentage compensation which the appellant would have earned on the second picture had the corporation not broken its contract.

(12) For recovery in damages for appellant's loss of screen credit and trade paper advertising which the plaintiff would have had if the corporation had not broken its contract.

The cause of action which was dismissed by the court, stated briefly, is: (13) For recovery in damages for the defamation of the appellant by the corporation's public statements.

Lorentz appeals from the judgments rendered.

The Summary Judgments.

Production was commenced upon a picture, based on a story called "Ecce Homo," which was written and owned by Lorentz, and he received $1,250 per week for forty weeks or until May 16, 1942, after which

date he has received no payment. About eight weeks later he was discharged, leaving the first picture twelve weeks short of completion. It will be seen that the first picture would have taken sixty weeks to produce.

It was contended by R.K.O. that the allegations of the complaint, supplemented by the contract which was attached by affidavit to the motion for summary judgment, brought into play Article 28, the waiver paragraph of the contract, and that R.K.O. was thereby released from any and all liability under Causes 2, 10, 11 and 12. The appellant contended that the waiver would only become effective upon and after all of the fixed compensation had been paid. Article 28, Section 1, of the contract is as follows: "The Producer expressly waives and releases the corporation from all claims or causes of action based on the failure of the Corporation actually to utilize the services of the Producer or the results thereof, or on the failure of the Corporation to produce or to release or to continue the distribution of the Pictures; provided, however, that nothing contained in this Article of this agreement shall be deemed to relieve the Corporation of its obligation to pay the Producer the fixed compensation payable to him pursuant to Article 1 of Section 11 of this Agreement."

In presenting his contention that the waiver does not support the judgments, appellant argues that the proviso in the waiver article means that the waiver is not effective unless and until all of the fixed compensation provided for in the contract has been paid and contends for a limitation upon the word "provided" as used in the article.

In Georgia R. & Banking Co. v. Smith, 1888, 128 U.S. 174, 9 S.Ct. 47, 32 L.Ed. 377, the Supreme Court said that the word "provided" has no more significance than the words "but" or "and" would have in the same place. See Minis v. United States, 1841, 15 Pet. 423, 10 L.Ed. 791. The appellant offered in support of his position a definition of the word "provided" from the latest edition of Webster's New International Dictionary, 2nd Ed., as follows:

"Provided * * * It being provided; on condition; with the stipulation; with the understanding; if;—often followed by that."

Appellant selected "on condition" and "if" from the definition as applying. However, the phrases "with the understanding" and "with the stipulation" are parts of the definition. But we think the selection of any one, or of any number of the synonymous words or phrases used to define the word, would not change the meaning of the waiver. The whole article must be considered as an integral part of the whole contract. The whole contract sets out the obligations of both parties, and the waiver portion limits the obligations of R.K.O. in circumstances not unlikely to arise in the type of enterprise covered by the contract. There are no apt expressions used which indicate any restricted application of the waiver nor to suggest that the payment of all fixed compensation is a condition precedent to its application.

It is well to recall that the very basis for a "waiver and release" from liability is "the failure of the corporation actually to utilize the services of the producer or the results thereof." Thus, the contract makes employment certain and as well the payment of the fixed compensation. Such obligation is fixed, but the work to be done and the results of the work must remain in the sound discretion of the moving picture corporation. The expensive business enterprise may by the turn of events at any time indicate the wisdom of discontinuing the production or the showing of a photoplay. Should events of such portent occur, the corporation is absolved from liability from prospective benefits to appellant. Appellee has reserved decision on such question to its own discretion.

■ The fact that the fixed compensation had not been paid in full at the time the action was brought did not constitute a failure of consideration. Non-payment is not synonymous with failure of consideration. In each of the cases cited by appellant a covenant not to sue, or a release from possible liability, is the object sought by one or both of the parties to the contract. It constitutes the moving consideration for agreement by the parties. This is not true in our case, for the appellant's right to the fixed compensation and his right to the other benefits running to him by the terms of the contract are together the compensation.

for his services, and neither one of these rights is interdependent as consideration for the other. The terms of the waiver support the conclusion of the trial judge.

Where no genuine issue as to a material fact is presented and there is none here, the moving party will be entitled to a summary judgment as a matter of law. Ohlinger's Federal Practice, Vol. 6, §§ 530 et seq; Rule 56 of Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

The Defamation Cause.

It is charged that the following statements made by the corporation about the time the corporation discharged the appellant concerning the appellant are false and by innuendo defame him: "That there had already been expended in the production of the first Picture, prior to the time the Corporation ordered the plaintiff to stop production of said Picture approximately $400,000.00; that a total of $400,000.00 was all that was allotted for the entire production of said Picture; that an additional $400,000.00 would be required to complete said Picture; and that the Corporation hoped that plaintiff would be persuaded to return and finish said Picture on a reduced budget."

The statements, as held by the trial court, are not reasonably susceptible of meaning, nor is their fair or reasonable import that appellant was incompetent in his work, or that he was unwilling to cooperate or unmindful of the corporation's desire to do business at a profit, or that he refused to cooperate to reduce costs. The appellant sought to attach such meanings by innuendo, but the trial court did not err in holding that such inferences could not fairly be drawn from the statements.

An explanation in regard to stoppage of production was not unreasonable, and it is far more reasonable to infer from the explanation made that the corporation had expected the picture to be produced for $400,000 but instead another $400,000 would probably be necessary, and the corporation hoped appellant would return and that a means would be devised to lessen the cost. In no way is any fault or blame attributed to the appellant.

The appellant seeks to attach a meaning beyond the fair and reasonable import of the language used. Ordinarily, an innuendo may not lend a meaning to allegedly defamatory matter different than or broader than the words themselves naturally hold, that is, it cannot add to, enlarge, or change the natural sense of the published words. See Emde v. San Joaquin, Etc., Council, 1943, 23 Cal.2d 146, 159, 143 P.2d 20, 150 A.L.R. 916; Bates v. Campbell, 1931, 213 Cal. 438, 442, 443, 2 P.2d 383; Chavez v. Times-Mirror Co., 1921, 185 Cal. 20, 25, 195 P. 666. Nor may the innuendo be used to give the words an unnatural or forced meaning. See Maas v. National Casualty Co., 4 Cir., 1938, 97 F.2d 247; Phillips v. Union Indemnity Co., 4 Cir., 1928, 28 F.2d 701. The court in seeking to determine the possible meaning of the published language in the light of extrinsic facts must look to see if the words are reasonably susceptible of or whether they reasonably could be understood to have the defamatory meaning suggested by the innuendo. See Bates v. Campbell supra; Chavez v. Times-Mirror Co., supra; Jackson v. Underwriters' Report, Inc., 1937, 21 Cal.App. 2d 591, 69 P.2d 878. The possible inference that appellant might be unwilling to return at a reduced budget is not defamatory and would not suggest insubordination.

It has been said that "In determining whether the words are capable of defamatory meaning the Judge will construe them according to the fair and natural meaning which will be given them by reasonable persons of ordinary intelligence, and will not consider what persons setting themselves to work to deduce some unusual meaning might extract from them," Gatley, Libel and Slander, 3rd Ed., 1938; and that "In determining whether the alleged defamatory matter is libelous per se it is the duty of the court to give the language used the natural and popular construction of the average reader, not the critical analysis of a mind trained in technicalities. Sullivan v. Warner Bros. Theatres, Inc., 1941, 42 Cal. App.2d 660, 662, 109 P.2d 760, 762. See Western Broadcast Co. v. Times-Mirror Co., 1936, 14 Cal.App.2d 120, 57 P.2d 977; Phillips v. Union Indemnity Co., 4 Cir., 1928, 28 F.2d 701, 702.

Refusal to Permit Amendment.

It was not error for the court to deny appellant the opportunity to amend his complaint. He did not request permission to do so in the trial court except as to certain minor details for which permission was granted. There was no suggestion in the complaint of fraud or mistake and no presentation of facts which would be pertinent to a defense based upon waiver or estoppel which he now asks the opportunity to allege and prove. If appellant had evidence as to any such defenses he should have filed counter-affidavits in the summary judgment proceedings. Nahtel Corporation v. West Virginia Pulp & Paper Co., 2 Cir., 1944, 141 F.2d 1. The allowance of amendments after issue joined is discretionary with the trial court, and refusal of leave to amend is ground for reversal only upon abuse of discretion. United States v. Lehigh Valley R. Co., 1911, 220 U.S. 257, 31 S.Ct. 387, 55 L.Ed. 458; Maryland Casualty Co. v. Hosmer, 1 Cir., 1937, 93 F.2d 365; O'Quinn v. United States, 5 Cir., 1934, 70 F.2d 599.

Affirmed.