## RKO RADIO PICTURES, Inc. v. SHERIDAN.

## SHERIDAN v. RKO RADIO PICTURES, Inc.

No. 12927.

United States Court of Appeals Ninth Circuit.

March 5, 1952.

Rehearing Denied April 22, 1952.

Mitchell, Silberberg & Knupp and Guy Knupp, all of Los Angeles, Cal., for appellant.

Gang, Kopp & Tyre, Martin Gang and Milton A. Rudin, all of Los Angeles, Cal., for appellee.

Before STEPHENS and HEALY, Circuit Judges, and McCORMICK, District Judge.

HEALY, Circuit Judge.

This case presents cross-appeals from a judgment rendered below on a jury verdict in a breach of contract suit brought by Sheridan against RKO. Jurisdiction was based on diversity of citizenship. The jury returned a verdict in favor of Sheridan for $50,000 plus interest.

On April 29, 1949, Sheridan and RKO entered into a written contract whereby RKO employed Sheridan to portray the leading female role in a motion picture entitled "Carriage Entrance." RKO agreed to pay Sheridan $150,000 for the term of the contract: $50,000 thereof payable on the first regular payday after photography commenced, the remainder deferred and payable only from the gross receipts of the picture.

Paragraph 1 of the contract stated that Sheridan was not required to render any services under the agreement unless and until she approved the script, the director and the leading male actor. At the time Sheridan signed the contract, she also signed a letter prepared by RKO, in which she stated that she approved the script, director and Robert Young as leading male actor. The letter further stated that RKO was not obliged to assign Young to the picture, but that Sheridan reserved the right to approve any other individual proposed by RKO, as provided in Paragraph 1 of the agreement.

Young in fact rejected the role, and for a period the parties held discussions seeking agreement on a substitute for Young. In addition, during this period, Sheridan reported to the studio at various times for consultations regarding costumes, and for fittings of the gowns made for the picture.

On August 17, 1949, RKO ended the discussions about the leading male actor by sending Sheridan a written notice that it would not use her in the picture and would not pay her any compensation. This suit followed.

On its appeal, RKO made one basic point, relying on a portion of Paragraph 29 of the contract. That portion states: "However, if, because Artist does not approve any one or more of the items specified in paragraph 1, Artist does not become obligated to, and does not, render any services pursuant hereto, Producer shall not be required to pay any compensation whatever to Artist hereunder."

RKO contends the trial court erred in holding as a matter of law that Sheridan, in signing the abovementioned letter, approved the leading male actor within the meaning of Paragraph 1, and in then instructing the jury that the only question for it to decide was whether the services rendered with regard to costumes were compensable services "pursuant to" the agreement. It is RKO's position that Sheridan had not "approved" within the meaning of Paragraph 1, and that the jury should have been instructed that if it found that RKO in good faith proposed suitable actors, RKO, under the terms of Paragraph 29 above quoted, was entitled to terminate the employment relationship without paying Sheridan any compensation whatever.

Since our jurisdiction rests solely on diversity of citizenship, California

law is controlling here. No parol evidence was admitted to show the intention of the parties; thus the construction of the contract presents a question of law which this court must determine. Moore v. Wood, 26 Cal.2d 621, 630, 160 P.2d 772, 776; Trubowitch v. Riverbank Canning Co., 30 Cal.2d 335, 182 P.2d 182.

In our view of the case, we need not decide whether the question of RKO's good faith was improperly withdrawn from the jury. We interpret Paragraph 29 of the contract to permit RKO to pay no compensation whatever where Sheridan not only does not become obligated to render services, but in fact does not render any such services pursuant to the contract. Here the jury verdict determined that Sheridan's services were rendered pursuant to the contract. Thus we believe the provision has no application in this case.

RKO argues that this interpretation would be correct only if the word "or" were used, rather than the word "and." However, this provision purports to do no more than state when RKO will be relieved of the duty to pay compensation. The use of the word "and" clearly implies that such relief is forthcoming only where two contingencies occur: Sheridan does not become obligated to, and in fact does not, perform services under the contract.

Further, RKO's theory would require making a distinction between services under the contract (which the jury found were rendered), and services under the contract under obligation. Such an interpretation would make the words "and, does not render any services pursuant hereto" entirely meaningless, since they would not add anything to the phrase, "does not become obligated to" render services. Since RKO drafted the contract, we must assume that it intended the parenthetical expression to have some meaning. The very fact that it is used in a parenthetical manner suggests that it limits the more general language preceding it. We think that RKO must be held responsible for any ambiguity created by its use of language, and that the ambiguous language must be construed strictly against it. Calif.Civ.Code, § 1654;

Taylor v. J. B. Hill Co., 31 Cal.2d 373, 189 P.2d 258.

On her cross-appeal, Sheridan complains that the trial judge erred in limiting her maximum recovery to $50,000 plus interest. Again the problem is created by a portion of Paragraph 29 of the agreement. The first sentence of that section provides: "Producer shall not be required to use Artist's services hereunder or to complete the production of 'Carriage Entrance,' and shall be deemed to have fully performed all its obligations to Artist by paying Artist the minimum compensation payable to Artist hereunder."

The trial judge held that this provision limited RKO's liability for breach of contract damages to minimum compensation under the contract. He also held that the phrase "minimum compensation" was unambiguous, and meant the least amount payable under the agreement. This, he determined, was $50,000, which was the portion of the compensation not deferred and dependent on the existence of box office receipts.

Sheridan first argues that because the jury determined that services were rendered under the contract, and since it was stipulated that the picture was later completed with other stars, neither contingency upon which the provision would be applicable occurred. We agree with the trial judge's conclusion that the provision relating to completion of the picture must be read in the light of the employment relationship then existing, and that the contingency contemplated by that provision occurred if for any reason the picture was not completed with Sheridan as the star.

Sheridan next argues that the above quoted provision was a true alternative performance clause. Thus, when RKO discharged Sheridan without tendering "minimum compensation," it waived that right and became liable for full breach of contract damages. We believe the provision was intended to place a limit on the liability of RKO if for any reason it failed to complete the picture. Thus, if RKO rightfully terminated under some other section of the contract, it was not liable at all.

If it wrongfully terminated, it became liable to pay "minimum compensation." Whether it constituted a breach of contract or not, it was permissible for RKO to provide for discharge of its entire liability to Sheridan on payment of that sum. Lorentz v. RKO Radio Pictures, 9 Cir., 155 F.2d 84.

The remaining point urged by Sheridan has more substance. It is contended that the trial judge erred in deciding as a matter of law that the phrase "minimum compensation" used in Paragraph 29 meant $50,000. Parol evidence offered by Sheridan to aid in interpreting the phrase was excluded.

The admissibility of parol evidence to explain the meaning of this provision is determined by California law. Rule 43(a), Federal Rules of Civil Procedure, 28 U.S. C.A.; Patterson-Ballagh Corp. v. Byron Jackson Co., 9 Cir., 145 F.2d 786. In California, parol evidence as to the circumstances and intentions of the parties is admissible when the meaning of the words used in a contract is uncertain. Calif.Civ. Code, § 1647; Calif.Code Civ.Proc. § 1860; Lemm v. Stillwater Land & Cattle Co., 217 Cal. 474, 19 P.2d 785. We think the phrase as used in this contract is definitely ambiguous, and that parol evidence should have been admitted. The phrase in question does not otherwise appear in the contract, nor is it anywhere defined. Nor can we be sure that the phrase meant $50,000 on the theory that, as the fixed compensation payable, it was the least amount payable under the contract. Under certain conditions contemplated in the contract, less than $50,000 would be payable to Sheridan. Also, wherever the $50,000 figure appears in the contract, it is designated not as "minimum compensation," but as "flat compensation." The reason for the difference in terms is difficult to discover, if it was intended that "minimum compensation" was $50,000.

RKO contends that, in any event, the exclusion of the proffered parol evidence was not prejudicial, because all the evidence was irrelevant. Suffice it here to say that at least certain portions of the evidence offered were very relevant in determining the meaning of the phrase. Whether a particular item of proof which may be offered after the remand is inadmissible under California law is for the decision of the trial judge.

The judgment is reversed in the respect indicated and the cause is remanded for further proceedings not inconsistent with this opinion.