[Civ. No. 13602. First Dist., Div. Two. June 30, 1948.]

THOMAS A. DETHLEFSEN, Respondent, v. ROBERT
J. STULL, Appellant.

Carroll F. Jacoby for Appellant.

Mercel E. Cerf, Robinson & Leland for Respondent.

GOODELL, J.—Respondent sued appellant for libel and recovered a judgment for $1,000 general damages, $1,000 exemplary damages, and costs. A motion for new trial was denied and this appeal was taken.

From 1942 until 1946, the litigants were partners in a business which dealt in articles and devices used by magicians. During appellant's absence at the war respondent carried on the business. After appellant's return differences arose between them and a suit was brought by appellant against respondent for a dissolution and an accounting. A settlement was reached out of court, evidenced by a written agreement dated September 10, 1946, from which it appears that the parties divided equally between themselves the merchandise on hand, and appellant bought from respondent for $1,750 "the machinery and equipment of said partnership, the leasehold interest thereof, and the exclusive right to use" the firm name. On September 18, the matter was wound up completely by the payment by appellant to respondent of the difference between the $1,750 purchase price and the amount which respondent owed appellant on the settlement, and respondent gave appellant a receipt for such payment.

Respondent then inserted in a trade journal an announcement of the dissolution. Appellant felt that this called for some action on his part, and in the first part of October he mailed (as the court found) "to the customers and potential customers of plaintiff within a 200-mile area of San Francisco and to dealers in magic throughout the United States," a letter announcing the dissolution and soliciting a continuance of patronage for himself, in which he said:

"As you may know, I served in the U. S. Navy for about three years, during which time I was away from San Francisco. Upon my return certain differences developed as a result of Mr. Dethlefsen's activities. Among other things an audit of the books disclosed that, over a period of months, Mr. Dethlefsen had received moneys belonging to the firm in the sum of about $1400. which he had failed to deposit to the firm's account.

"In order to protect my interest in the business, I filed suit against Mr. Dethlefsen to recover the business from him, and for an accounting. The suit was thereafter settled out of court, as a result of which Mr. Dethlefsen acknowledged his indebtedness to the firm and returned the moneys due. I received the exclusive right to the name 'Stull Magic Manufacturing Co.', and the premises and equipment. . . ."

The complaint alleged that by these words defendant "intended to charge and assert, and to be understood as charging and asserting and by the readers of said letter . . . was in fact understood as charging and asserting that this plaintiff, in violation of his trust as a partner, had dishonestly withheld funds from the partnership and was of corrupt and dishonest character." The court found this allegation to be true, and it found the following part of the letter to be untrue: "Among other things an audit of the books disclosed that, over a period of months, Mr. Dethlefsen had received moneys belonging to the firm in the sum of about $1400. which he had failed to deposit to the firm's account . . . as a result of which Mr. Dethlefsen acknowledged his indebtedness to the firm and returned the money due."

Appellant contends that the court erred in determining that the language amounted to a charge of grand theft, thereby rendering it libelous *per se,* and that the evidence does not support the finding of falsity.

"Libel is a false and unprivileged publication by writing . . . which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation" (Civ. Code, § 45).

This definition "is very broad and has been held to include almost any language which, upon its face, has a natural tendency to injure a person's reputation, either generally, or with respect to his occupation" (*Bates* v. *Campbell,* 213 Cal. 438, 441 [2 P.2d 383], citing cases).

That the language is libelous *per se* is settled by the case of *Tonini* v. *Cevasco,* 114 Cal. 266, 272 [46 P. 103], where one of the utterances was "The agency of G. B. Cevasco & Co. must state . . . that . . . they were compelled to discharge Mr. M. G. Tonini for his conduct not irreprehensible" and the other was: ". . . Mr. Tonini has not *moved away,* but has been *discharged* . . . for conduct not irreprehensible. The case of *Jimeno* v. *Commonwealth Home Builders,*

47 Cal.App. 660 [191 P. 64], is likewise authority for such holding.

▮ To be libelous *per se* the writing need not charge or impute a crime (*Stevens* v. *Snow,* 191 Cal. 58, 62 [214 P. 968]; 16 Cal.Jur. p. 44). Falsely charging a person with a violation of confidence reposed in him or with treachery to his associates is actionable *per se* (*Jimeno* v. *Commonwealth Home Builders,* 47 Cal.App. 660, 666, *supra*; 16 Cal.Jur. pp. 42-43). ▮ The clear meaning of the letter, to say the very least, is that respondent was an undesirable partner because he was dishonest in his financial dealings with his copartner.

In the course of the trial the judge made the following comment: "Yes, but the next line, he really accuses him of embezzling $1,400, and says he brought suit against him and the suit was settled. That is the substance—the suit was thereafter settled out of court as the result of which Mr. Dethlefsen acknowledged his indebtedness to the firm and returned the money due. That indicates that he admitted that he had pilfered or embezzled $1,400, and when he was caught, he returned it, and the suit was the means of making him return it.

"One reading the letter would come to this conclusion: 'Oh, oh, my good friend went in the Navy and while he was so patriotically occupied, his partner started robbing him.' He says that in effect."

Appellant argues that, since the partnership is admitted, and since it is settled law that a partner can neither steal nor embezzle partnership funds (*People* v. *Foss,* 7 Cal.2d 669, 670 [62 P.2d 372]; *People* v. *Hotz,* 85 Cal.App. 450, 452 [259 P. 506]) the court entertained an erroneous view that the letter had charged either grand theft or embezzlement, or both.

▮ That does not follow at all. It was the function of the court to construe the letter in the sense that is most natural and obvious, and in which the persons to whom the letter was sent would be most likely to understand it (*Tonini* v. *Cevasco,* 114 Cal. 266, 274, *supra*). ▮ The customers and the dealers in magic who received the letter would not know that, according to law, a partner can neither steal nor embezzle partnership funds, and the judge was simply placing himself in the situation of the persons who received the letter (see *Bates* v. *Campbell,* 213 Cal. 438, 442, *supra*) and was reading it as he conceived average persons, not

"trained in technicalities" would read it (see *Western Broadcast Co.* v. *Times-Mirror Co.*, 14 Cal.App.2d 120, 124 [57 P.2d 977] ; *Swift & Co.* v. *Gray,* 101 F.2d 976, 981).

Appellant relying on *Peabody* v. *Barham,* 52 Cal.App.2d 581 [126 P.2d 668], argues that if the writing is susceptible of an innocent interpretation it is not libelous *per se.* He does not, however, suggest or illustrate how the language could be given such meaning. The trier of the facts concluded that there was no ambiguity and that the letter charged wrongdoing.

Appellant also argues that there was no testimony that the letter was either received or read by anyone. All evidence on this point was dispensed with by the admissions in the pleadings. Respondent alleged that defendant *published* the letter. In his answer appellant did not deny the publication, but alleged "that said letter was delivered to the customers and trade of defendant . . ."

This brings us to the appellant's plea of the truth of his statements.

Appellant set up the firm books and on his return from the war in October, 1945, struck a balance. The partners then agreed to divide the responsibilities; appellant undertook to handle procurement and manufacturing and respondent undertook to handle the office and keep the books, including the depositing of the firm's funds. Respondent adhered to the bookkeeping system which appellant had set up.

About July 7 or 8, 1946, the trouble between the partners had become serious. About July 13, appellant took possession of the books and from then into September he kept them and they were not available to respondent; during that time respondent had the bank book.

By July 13 or 14, each partner had consulted his lawyer and the situation thenceforth was summed up by respondent as follows: each partner kept a certain amount of cash which came in, and nobody went to the bank and nobody gave anybody anything after the law suit was filed, while appellant testified that when he took the books and would not give them to respondent, respondent took the bank book and would not give it to appellant.

The books contained an account called "Studio Cash," the function of which was to show in one column the proceeds of sales that came in over the counter or by mail, and in the other column the money either paid out by cash or deposited

in bank. Appellant testified that "The difference between the two ... columns of that account, shows the money that Mr. Dethlefsen had in his possession that had come in, but had not been deposited or spent in some way."

Appellant testified that when he took the books he made an audit covering the period from his return from the war *until July 13*; that when he filed the dissolution suit on July 23, he saw from the books that there was about $1,400 in "Studio Cash" for which respondent had to account to the partnership, and in the complaint therein he alleged that respondent owed the partnership $1,400. He admitted that he did not then have the benefit "of seeing the bank books to know that anything had been deposited" and further that he did not take note of a credit to respondent of $277.90.

Between July 13 and July 22, respondent made four deposits in the bank of accumulated partnership funds aggregating $992.91. It was the responsibility of respondent to enter these deposits on the books, which would have changed the "Studio Cash" figure from about $1,400 to considerably less but appellant's seizure of the books on July 13 prevented this.

When, therefore, appellant filed the accounting suit on July 23, and alleged that respondent owed the partnership $1,400 his allegation was not in accord with the actual facts.

The complaint in that suit was based on an incomplete set of books in which no entry had been made for 10 days (although the business was being carried on and was not at a standstill) and it was based on an incomplete audit which admittedly did not take into account the deposits of almost $1,000 which had been made in the 10-day interval.

The audit and the accounting suit are of importance herein because appellant saw fit to base the charges in his letter upon them. The letter was sent out early in October and therefore spoke as of that time. The facts just discussed were at that time fully known to appellant, for in September he had personally brought the books up to date and had entered all the firm's transactions from July 13 onward including all deposits made while he had withheld the books.

When he wrote the letter in question he persisted in making the same statement that he had made in the complaint in the accounting suit on July 23 respecting the $1,400.

In *Bates* v. *Campbell*, 213 Cal. 438, 441 [2 P.2d 383], it is said "the alleged libelous publication is to be construed 'as

well from the expressions used, as from the whole scope and apparent object of the writer' [citations]."

 The *apparent object of the writer* in the instant case, according to the trial judge's view, was to convey to the persons who read the letter the idea, as the judge put it, that respondent had embezzled $1,400 "and when he was caught, he returned it, and the suit was the means of making him return it." This is indicated by appellant's persistence in using the figure $1,400, which is the central theme of the letter and the only figure mentioned therein. It is indicated by the language that "as a result of which [i. e., the accounting suit] Mr. Dethlefsen acknowledged his indebtedness to the firm and returned the moneys due," for the phrase *"returned the moneys"* indicates that moneys had been *taken*. Moreover, no moneys were "returned." The accounting suit to which the letter refers was filed on July 23. The four deposits aggregating $992.91 were made between July 13 and 22, hence they could not have been made *as the result* of a piece of litigation not yet filed.

The statement that "over a period of months, Mr. Dethlefsen had received moneys belonging to the firm in the sum of about $1400. which he had failed to deposit" could mean only a constant and prolonged withholding of about $1,400. The record shows that the undeposited money shown by "Studio Cash" varied from time to time and there was no such figure as $1,400 *"over a period of months."*

The accounting suit was never tried. It was dismissed "with prejudice." In September, the parties arrived at a settlement out of court and the amount of $639.14 was found by the parties to be owing by respondent to the partnership, one-half of which of course was his own. Appellant's half, or $319.57, was deducted from the $1,750 which, by agreement, appellant was to pay to respondent. It was with these accomplished facts before him that appellant wrote the letter carrying the $1,400 implication as its central theme and conveying the thought, as the trial judge concluded, that the suit had forced the "return" of about $1,400.

What really happened was that when the dispute reached fever heat appellant took the books into his own possession. He audited them and filed his accounting suit based on the face of books in which no entries had been made for 10 days and in which entries could not have been made by respondent. Having arrived at the $1,400 figure which he used as the basis

for the accounting suit, he used the same figure as the basis for his accusatory letter at a time when, by his own investigation, he knew that $1,400 was a false quantity.

■ The burden of proving the truth of the statements was upon the appellant. It is true, as contended by him, that "it is not necessary to prove the literal truth of an allegedly libelous accusation in every detail, so long as the imputation is substantially true so as to justify the 'gist' or 'sting' of the remark" (*Emde v. San Joaquin etc. Council*, 23 Cal.2d 146, 160 [143 P.2d 20, 150 A.L.R. 916]). ■ Without repetition, we are satisfied from what has been said that this burden was not sustained, but that the finding that the charge was untrue is amply supported.

The judgment is affirmed.

Nourse, P. J., and Dooling, J., concurred.