[Civ. No. 27683. First Dist., Div. Three. Aug. 17, 1971.]

SAMSON B. MULLINS, as President of Oakland Police Officers Association, etc., et al., Plaintiffs and Appellants, v. CHARLES DE YOUNG THIERIOT et al., Defendants and Respondents.

## COUNSEL

Pettis & Brott, Eugene A. Brott and Peter A. Bertino for Plaintiffs and Appellants.

Cooper, White & Cooper, R. Barry Churton, Alan L. Fox and Alan C. Freeland for Defendants and Respondents.

## OPINION

**DRAPER, P. J.**—Plaintiffs in this action for libel are the president of Oakland Police Officers Association "on behalf of" that association and its members; two members of the Oakland Police Department, and one member of the Emeryville Police Department. They appeal from judgment entered after defendants' general demurrer was sustained without leave to amend.

The statement complained of was published April 15, 1968, in the San Francisco Chronicle column of Herb Caen. It reads: "Bay City Beat: When young Bobby Hutton and Eldridge, Cleaver were trapped by the cops in

that Oakland house, the experienced Cleaver told the kid: 'Take off all your clothes before we walk outside—that way they can't claim you were trying to pull a gun and shoot you.' Cleaver thereupon stripped but Hutton was too shy: he kept his shorts on. And was shot dead. The naked Cleaver was wounded."

No special damages are alleged by plaintiffs. Thus they state a cause of action only if the language used in the publication is defamatory on its face (Civ. Code, § 45a; 3 Witkin, Cal. Procedure (2d ed. 1966) Pleading § 595, p. 2236).

■ In determining whether the language used meets this test, we are required to place ourselves " 'in the situation of the . . . reader, and determine the sense or meaning of the language . . . according to its natural and popular construction.' [We must measure the publication] not so much by its effect when subjected to the critical analysis of a mind trained in the law, but by the natural and probable effect upon the mind of the average reader. ■ A defendant is liable for what is insinuated, as well as for what is stated explicitly [citations]." (*MacLeod* v. *Tribune Publishing Co.*, 52 Cal.2d 536, 547 [343 P.2d 36].)

*MacLeod* goes on to disapprove the "possible innocent meaning" rule, pointing out (p. 550) that "hair-splitting analysis of language" in an effort to discover such an innocent meaning "has no place in the law of defamation."

Obeying the mandate of *MacLeod,* we do not seek a possible innocent meaning, nor do we require, as did some earlier cases, that such a meaning be negated by the article itself.

■ Appellants, however, argue that an average reader would conclude that the publication charges the police with crime. The argument is that the "item itself is devoid of any suggestion that Hutton was armed, resisting arrest, or fleeing from arrest at the time he was 'shot dead.' Instead, since Hutton is described as being practically naked and as walking out of a house in which he had been trapped, it can only be inferred that he was surrendering. If, in fact, a reasonable person would conclude that Hutton was neither resisting, nor fleeing from arrest, then the term 'shot dead' clearly implies the unjustified killing of a human being."

This argument falls into the very error denounced in the *MacLeod* case, although for an opposite reason. Just as we refrain from "hair-splitting analysis" of what is stated in the article to find a possible innocent meaning, so we refrain from a dissection of what is not said to find a defamatory meaning which the article does not convey to a lay reader. Neither scantiness

nor absence of clothing negates either the carrying of arms, or flight, or resistance to arrest. Neither reasonably suggests surrender. Thus the article neither states nor reasonably implies an absence of resistance or flight, or a surrender.

Defendants' publication lacks each of the elements which were held defamatory in a recent decision (*Mullins* v. *Brando,* 13 Cal.App.3d 409 [91 Cal.Rptr. 796]) in which, speaking of the same incident, defendant Brando said he had been told that "the police department was out to get the Panthers." He said that Hutton "came out of the house with his hands up . . . . They surrendered and he came out with his hands full up and he was told to run for the car. And he was shot down in front of any number of witnesses." (P. 412.)

That statement contains the very elements which are absent here. It alleges that Hutton surrendered, was told to run, and was shot down. All this followed the suggestion that the police department was "out to get" the group to which Hutton belonged. None of these charges is contained in the newspaper item here complained of. We are no more free to infer defamation from what is neither said nor reasonably implied than we would be to infer an innocent meaning from what is not negated by the publication. We find the statement here not to be defamatory on its face. Thus we need not consider the distinctions from the United States Supreme Court decision (*New York Times Co.* v. *Sullivan,* 376 U.S. 254 [11 L.Ed.2d 686, 84 S.Ct. 710]) made by the court in *Mullins* v. *Brando, supra,* nor their application to a newspaper as distinguished from the private citizen who made the televised comments sued upon in *Brando.*

On a distinct ground, the demurrer was properly sustained as to Oakland Police Officers Association, since that organization alleges no cause of action, either as an association or on behalf of its 650 members as a class (*Mullins* v. *Brando, supra,* 13 Cal.App.3d 409, 422-423).

Judgment affirmed.

Brown (H. C.), J., and Caldecott, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 14, 1971.