[No. B008350. Second Dist., Div. Seven. April 16, 1985.]

ROBERT D. SELLECK, Plaintiff and Appellant, v.
GLOBE INTERNATIONAL, INC., Defendant and Respondent.

COUNSEL

Lavely & Singer, John H. Lavely, Jr., and Lawrence J. Kaplan for Plaintiff and Appellant.

Deutsch, Levy & Engel, Glassman & Browning, Anthony Michael Glassman, Jane D. Saltsman and Stephen J. Rawson for Defendant and Respondent.

OPINION

LILLIE, P. J.—Robert Selleck sued Globe International, Inc. for damages for libel and invasion of privacy by depicting plaintiff in a false light. Defendant's demurrer to the second amended complaint was sustained with 30 days' leave to amend. Plaintiff failed to amend within the specified period.

 He appeals from the ensuing judgment of dismissal[1] (Code Civ. Proc., § 581, subd. (c)).

## FACTS

Plaintiff is the father of actor Tom Selleck. This lawsuit is based on an article published by defendant which contained statements about Tom Selleck attributed to plaintiff.

The second amended complaint contained two causes of action. The first cause of action (libel) alleged: Defendant publishes and circulates, in the City and County of Los Angeles, a weekly magazine known as the Globe which is read by a great number of persons in the area of its circulation. The front page of the December 14, 1982 issue of the Globe carried the headline "Tom Selleck's love secrets—By His Father." The article to which the headline referred was entitled "Why Tom Selleck Can Never Be A Happy Lover"; appearing as an inset in the article was a photograph of plaintiff with the caption "His Father Reveals All." Among the statements in the Globe article attributed to plaintiff were the following: "Tom Selleck may be TV's sexiest leading man but his dad says he's really a shy guy so ill at ease with women that he finds it difficult to sustain a lasting relationship"; " 'Tom's relationships with the women in his life are always disappointing because he's just not the person they think he should be,' the elder Selleck explains"; "He [plaintiff] calls Tom strictly a one-woman man not interested in dating a lot of girls"; " 'To tell the truth, instead of taking out his tensions on romantic flings,' says Selleck Senior, 'my son would rather be fixing up the house or doing some gardening' "; " 'Anyway, there's still really only one lady in his life and that's his wife Jackie,' he adds. 'Even though they are apart, Tom still thinks of himself as being married. . . Tom thinks of marriage as a forever thing.' "

The first cause of action further alleged: Plaintiff never gave an interview to any of defendant's reporters and did not consent to any interview that could be used by or sold to defendant. Since plaintiff never made any statements to defendant, or to any other person, firm or entity, that could be characterized as pertaining to Tom Selleck's so-called "love secrets" and never "revealed" anything on the subject of whether Tom Selleck could "never be a happy lover," the headline, title and caption are false and defamatory. The quotations in the article falsely attributed to plaintiff state expressly, or by implication or insinuation, that plaintiff was interviewed

---

[1] Plaintiff also appeals from the order sustaining the demurrer. While an order sustaining a demurrer, whether with or without leave to amend, is not appealable, such a ruling will be reviewed on appeal from a subsequent judgment of dismissal. (*Timberidge Enterprises, Inc.* v. *City of Santa Rosa* (1978) 86 Cal.App.3d 873, 878 [150 Cal.Rptr. 606].)

by and made statements to defendant's reporters, or made public statements of the type attributed to him in the article, regarding private and personal aspects of his son's life. Defendant published the statements with knowledge that they were falsely attributed to plaintiff or with a reckless disregard of the fact that plaintiff did not make the statements. The article is libelous on its face because, by falsely attributing to plaintiff statements which he did not make, it subjects him to hatred, contempt, ridicule and humiliation and injures him with respect to his reputation, profession and business. Plaintiff served on defendant a demand for correction of the defamatory and false statements contained in the article; defendant refused to publish a correction. As a result of the publication of the article, plaintiff has sustained general damages in amount not less than $1 million. As a further result of defendant's wrongful conduct plaintiff has sustained, and will sustain, special damages including loss of reputation in his profession and loss of business, resulting in loss of earnings and profits in an amount not yet ascertainable.[2]

The second cause of action (false light invasion of privacy) incorporated each allegation of the first cause of action and further averred: By publishing the article, defendant placed plaintiff before the public in a false light which is highly offensive to plaintiff and would be highly offensive to a reasonable person. Defendant had knowledge of, or acted in reckless disregard of, the false light in which plaintiff would be placed by publication of the article. While general damages were alleged, the second cause of action did not allege special damages except by incorporation of the allegations of the first cause of action.

Defendant demurred to the second amended complaint on the following grounds: (1) because the article is not libelous on its face and special damages are not adequately pleaded, a cause of action for libel is not stated; (2) inasmuch as a claim of false light invasion of privacy is subject to the same requirements as a libel claim, including the pleading of special damages, the second cause of action likewise fails to state a cause of action; and (3) the second cause of action for false light invasion of privacy is, in substance, the equivalent of the first cause of action for libel and therefore should be dismissed as surplusage. The demurrer was sustained on the first and second grounds[3] with 30 days' leave to amend. Following plaintiff's failure to

---

[2]Plaintiff also pleaded facts intended to establish a basis for an award of punitive damages. Such allegations are not pertinent to the issues on appeal and we therefore ignore them.

[3]The order sustaining the demurrer states in pertinent part: "*First Cause of Action*: The changes made [in amending first amended complaint] do not cure the failure to adequately plead special damages. The article speaks in general terms, essentially opinions by plaintiff that his son is a steady guy in his approach to romantic relationships. [¶] *Second Cause of Actions*: Although I agree with plaintiff that an action for false light privacy is not the equivalent of a libel claim . . . there is still the need to adequately plead special damages."

amend within that period, defendant moved for entry of judgment of dismissal. The motion was granted and judgment was entered dismissing the action.

## DISCUSSION

## I

## LIBEL

A defamatory publication not libelous on its face is not actionable unless the plaintiff alleges that he has suffered special damages as a result thereof. (Civ. Code, § 45a;[4] *Forsher* v. *Bugliosi* (1980) 26 Cal.3d 792, 806-807 [163 Cal.Rptr. 628, 608 P.2d 716]; *Mullins* v. *Thieriot* (1971) 19 Cal.App.3d 302, 304 [97 Cal.Rptr. 27]; *Gautier* v. *General Telephone Co.* (1965) 234 Cal.App.2d 302, 309 [44 Cal.Rptr. 404].) Plaintiff does not claim that he adequately pleaded special damages. (See *Pridonoff* v. *Balokovich* (1951) 36 Cal.2d 788, 791-792 [228 P.2d 6]; *Peabody* v. *Barham* (1942) 52 Cal.App.2d 581, 585 [126 P.2d 668].) He contends that the first cause of action on its face states a cause of action for libel, thus eliminating the need to allege special damages. (*Maidman* v. *Jewish Publications, Inc.* (1960) 54 Cal.2d 643, 654 [7 Cal.Rptr. 617, 355 P.2d 265, 87 A.L.R.2d 439].)

Libel is "a false and unprivileged publication by writing . . . which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." (Civ. Code, § 45.) Libel on its face is defined as "[a] libel which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact." (Civ. Code, § 45a.) Under this definition, "[t]he fact that an implied defamatory charge or insinuation leaves room for an innocent interpretation as well does not establish that the defamatory meaning does not appear from the language itself. The language used may give rise to conflicting inferences as to the meaning intended, but when it is addressed to the public at large, it is reasonable to assume that at least some of the readers will take it in its

---

[4]Civil Code section 45a provides: "A libel which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact, is said to be a libel on its face. Defamatory language not libelous on its face is not actionable unless the plaintiff alleges and proves that he has suffered special damage as a proximate result thereof. Special damage is defined in Section 48a of this code."

Civil Code section 48a, subdivision 4(b) defines "special damages" as "all damages which plaintiff alleges and proves that he has suffered in respect to his property, business, trade, profession or occupation, including such amounts of money as the plaintiff alleges and proves he has expended as a result of the alleged libel, and no other."

defamatory sense. . . . '[H]air-splitting analysis of language has no place in the law of defamation, dealing as it does with the impact of communications between ordinary human beings. It is inconsistent with the rule that 'the publication is to be measured not so much by its effect when subjected to the critical analysis of a mind trained in the law, but by the natural and probable effect upon the mind of the average reader.' . . . It not only finds no support in, but is contrary to, the provisions of section 45a, which define, not language susceptible of only one meaning, but language that carries *a* defamatory meaning on its face." (*MacLeod* v. *Tribune Publishing Co.* (1959) 52 Cal.2d 536, 549-551 [343 P.2d 36]; original italics.)

It is error for a court to rule that a publication cannot be defamatory on its face when by any reasonable interpretation the language is susceptible of a defamatory meaning. (*Cameron* v. *Wernick* (1967) 251 Cal.App.2d 890, 893 [60 Cal.Rptr. 102].) In reviewing the trial court's order sustaining the demurrer, our inquiry is not to determine whether the publication may have an innocent meaning but rather to determine if it reasonably conveys a defamatory meaning. (*Slaughter* v. *Friedman* (1982) 32 Cal.3d 149, 154 [185 Cal.Rptr. 244, 649 P.2d 886]; *Forsher* v. *Bugliosi, supra,* 26 Cal.3d 792, 803.) ▮ In making that determination we look to what is explicitly stated as well as what insinuation and implication can be reasonably drawn from the publication. (*Forsher* v. *Bugliosi, supra,* 26 Cal.3d at p. 803.) " ' ' "[N]ot only is the language employed to be regarded with reference to the actual words used, but according to the sense and meaning under all the circumstances attending the publication which such language may fairly be presumed to have conveyed to those to whom it was published. So that in such cases the language is uniformly to be regarded with what has been its effect, actual or presumed, and its sense is to be arrived at with the help of the cause and the occasion of its publication. And in passing upon the sufficiency of such language as stating a cause of action, a court is to place itself in the situation of the hearer or reader, and determine the sense or meaning of the language of the complaint for libelous publication according to its natural and popular construction." ' ' " (*MacLeod* v. *Tribune Publishing Co., supra,* 52 Cal.2d 536, 546-547.) The publication in question may not be divided into segments and each portion treated as a separate unit; it must be read as a whole in order to understand its import and the effect that it was calculated to have on the reader, and construed in the light of the whole scope and apparent object of the writer, considering not only the actual language used, but the sense and meaning that may be fairly presumed to have been conveyed to those who read it. (*Corman* v. *Blanchard* (1962) 211 Cal.App.2d 126, 131-132 [27 Cal.Rptr. 327].) Headlines and captions of an allegedly libelous article are regarded as a part of the article. (*Davis* v. *Hearst* (1911) 160 Cal. 143, 187 [116 P. 530].)

■ The article published by defendant contained both direct and indirect quotations of statements made by plaintiff about his son, Tom Selleck. The headline pertaining to the article proclaimed "Tom Selleck's love secrets—By His Father"; appearing amid the text of the article, above plaintiff's photograph, was the caption "His Father Reveals All." The content of the article, viewed in conjunction with such headline and caption, clearly and naturally conveys the impression that plaintiff granted an interview to defendant in which he divulged for public dissemination matters about his son which the son revealed to plaintiff in confidence. While most of the statements about his son which the article attributed to plaintiff are innocuous, and hence not logical subjects of "secrets," the following do not appear to fall into that category: the statement that Tom Selleck is "ill at ease with women" and the statement "he's just not the person they [women] think he should be." At least some of the readers of the article could consider these matters to be of the type that Tom Selleck expected his father not to divulge inasmuch as they can be said to damage Tom's image as "TV's sexiest leading man."

The complaint alleges that plaintiff did not give an interview to any of defendant's reporters and that the statements in the article were falsely attributed to him. For purposes of review of the order sustaining the demurrer, these allegations must be accepted as true. (*Green v. Cortez* (1984) 151 Cal.App.3d 1068, 1073 [199 Cal.Rptr. 221].) Falsely ascribing statements to a person which would have the same damaging effect as a defamatory statement about him is libel. (*Cameron v. Wernick, supra,* 251 Cal.App.2d 890, 894, fn. 2; *Kerby v. Hal Roach Studios* (1942) 53 Cal.App.2d 207, 213-214 [127 P.2d 577].) Falsely charging a person with a violation of confidence reposed in him is libel per se. (*Dethlefsen v. Stull* (1948) 86 Cal.App.2d 499, 502 [195 P.2d 56].) One reading the article in question reasonably could conclude that plaintiff violated the confidence reposed in him by his son by revealing the son's secrets for dissemination to the public. Defendant is in the business of publishing a weekly magazine which features (among other things) items concerning celebrities in the entertainment world; plaintiff is not a celebrity who would benefit from publicity by his exposure in the magazine. The article therefore is subject to the further inference that plaintiff was paid to divulge his son's secrets to defendant, imputing to plaintiff a Judas-like betrayal of his son.

■ The initial determination as to whether a publication is libelous on its face, or libelous per se, is one of law. (*MacLeod v. Tribune Publishing Co., supra,* 52 Cal.2d 536, 546; *Cameron v. Wernick, supra,* 251 Cal.App.2d 890, 893; *Williams v. Daily Review, Inc.* (1965) 236 Cal.App.2d 405, 410 [46 Cal.Rptr. 135].) ■ We conclude that the article, including the headline and caption and taking into account the cir-

cumstances of its publication, is reasonably susceptible of a defamatory meaning on its face and therefore is libelous per se. (See *Williams* v. *Daily Review, Inc. supra,* 236 Cal.App.2d at pp. 411-412.) Accordingly, the demurrer to the first cause of action was improperly sustained.

■■ ■■■ Defendant argues that neither individually nor collectively do the headline, caption and article give rise to a cause of action for libel because they do not convey facts, but merely expressions of opinion.[5] ■ An essential element of libel is that the publication in question must contain a false statement of fact; the determination of whether the allegedly defamatory statement constitutes fact or opinion is a question of law. (*Okun* v. *Superior Court* (1981) 29 Cal.3d 442, 450 [175 Cal.Rptr. 157, 629 P.2d 1369]; *Gregory* v. *McDonnell Douglas Corp.* (1976) 17 Cal.3d 596, 600-601 [131 Cal.Rptr. 641, 552 P.2d 425].) ■ In the present case the libel allegedly consists of the false statement that plaintiff revealed his son's secrets for dissemination to the public. The headline pertaining to the article states "Tom Selleck's love secrets—*By His Father* (italics added); the caption above plaintiff's picture in the body of the article states "His Father Reveals All"; the article contains both direct and indirect quotations of statements made by plaintiff concerning his son. It is thus clear that the headline, caption and article do not merely express defendant's opinion that plaintiff made statements about his son. Rather, they assert as a fact that plaintiff made the statements.

II

FALSE LIGHT INVASION OF PRIVACY

■ An action for invasion of privacy by placing the plaintiff in a false light in the public eye (see *Eastwood* v. *Superior Court* (1983) 149 Cal.App.3d 409, 416 [198 Cal.Rptr. 342]) is in substance equivalent to a libel claim. A plaintiff alleging false light, therefore, must satisfy the requirement of malice (*Time, Inc.* v. *Hill* (1967) 385 U.S. 374, 386-388 [17 L.Ed.2d 456, 466-467, 87 S.Ct. 534]; *Cantrell* v. *Forest City Publishing*

---

[5]Defendant also argues that the judgment of dismissal must be affirmed because California's libel statutes (Civ. Code, § 45 et seq.) are unconstitutional in that they impose liability without fault in violation of the First Amendment. Defendant did not demur to the second amended complaint on this ground and accordingly is foreclosed from raising the point on appeal. Failure of a complaint to state facts sufficient to constitute a cause of action and the court's lack of jurisdiction of the subject matter constitute grounds for demurrer which are not waivable and which may be asserted for the first time on appeal. (*Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616, 622 [102 Cal.Rptr. 815, 498 P.2d 1063].) A claimed violation of a constitutional right, however, must be raised in the trial court to preserve the issue on appeal. (See *Snelson* v. *Ondulando Highlands Corp.* (1970) 5 Cal.App.3d 243, 259 [84 Cal.Rptr. 800] (opn. on den. of rehg.).)

*Co.* (1974) 419 U.S. 245, 249-251 [42 L.Ed.2d 419, 425-426, 95 S.Ct. 465]) and the requirements of Civil Code section 48a.[6] (*Briscoe* v. *Reader's Digest Association, Inc.* (1971) 4 Cal.3d 529, 543 [93 Cal.Rptr. 866, 483 P.2d 34, 57 A.L.R.3d 1]; *Kapellas* v. *Kofman* (1969) 1 Cal.3d 20, 35, fn. 16 [81 Cal.Rptr. 360, 459 P.2d 912].) Of these requirements, only compliance with Civil Code section 48a is pertinent to the ground on which the demurrer to the second cause of action was sustained, i.e., failure to plead special damages. Section 48a provides that a libeled individual may recover no more than special damages unless, within 20 days of learning of the publication, he advises the publisher specifically what statements he claims to be libelous and demands that the statements be corrected, and the publisher fails to make such correction. Plaintiff alleged facts showing compliance with these provisions.[7] Accordingly, section 48a does not bar plaintiff's cause of action for false light invasion of privacy because of his failure to allege special damages. (Cf. *Briscoe* v. *Reader's Digest Association, Inc., supra,* 4 Cal.3d 529, 543.)

While our Supreme Court has held that a false light invasion of privacy claim must meet the requirements of a libel claim "on all aspects of the case," including the requirements of Civil Code section 48a (*Briscoe, supra; Kapellas* v. *Kofman, supra,* 1 Cal.3d 20), it has not expressly declared that the requirements of Civil Code section 45a are applicable to a false light claim.[8] To the extent that section 45a applies to such a claim, its

---

[6]Civil Code section 48a provides in pertinent part: "1. In any action for damages for the publication of a libel in a newspaper, or of a slander by radio broadcast, plaintiff shall recover no more than special damages unless a correction be demanded and be not published or broadcast, as hereinafter provided. Plaintiff shall serve upon the publisher, at the place of publication or broadcaster at the place of broadcast, a written notice specifying the statements claimed to be libelous and demanding that the same be corrected. Said notice and demand must be served within 20 days after knowledge of the publication or broadcast of the statements claimed to be libelous. [¶] 2. If a correction be demanded within said period and be not published or broadcast in substantially as conspicuous a manner in said newspaper or on said broadcasting station as were the statements claimed to be libelous, in a regular issue thereof published or broadcast within three weeks after such service, plaintiff, if he pleads and proves such notice, demand and failure to correct, and if his cause of action be maintained, may recover general, special and exemplary damages . . . ."

[7]Inasmuch as defendant's publication (the Globe) allegedly is a weekly magazine, not a newspaper, plaintiff was not required to plead compliance with the requirements of section 48a. (See *Burnett* v. *National Enquirer, Inc.* (1983) 144 Cal.App.3d 991, 1000-1004 [120 Cal.Rptr. 186, 84 A.L.R.3d 1234]; *Montandon* v. *Triangle Publications, Inc.* (1975) 45 Cal.App.3d 938, 951-953 [193 Cal.Rptr. 206]; *Morris* v. *National Federation of the Blind* (1961) 192 Cal.App.2d 162, 165-166 [13 Cal.Rptr. 336].) He nevertheless did so.

[8]This court recently concluded that "the specific purposes of section 45a's requirement of special damages to business or property for maintenance of an action for libel per quod are *wholly inapposite to a cause of action for false light invasion of privacy,* and . . . there is no warrant for extending the statute, which on its face concerns libel only, to bar the cause of action [plaintiff] has asserted." (*Fellows* v. *National Enquirer, Inc.* (1985) 165 Cal.App.3d 512, 532 [211 Cal.Rptr. 809].) The complaint there alleged invasion of privacy based on knowing or reckless exposure of plaintiff to false publicity, not defamatory on its

requirements are met in the present case. The publication which is the basis of plaintiff's libel claim is reasonably susceptible of a defamatory meaning on its face; plaintiff therefore is relieved of the section 45a requirement of pleading special damages in order to state a cause of action for libel. Inasmuch as plaintiff's claim for false light invasion of privacy is based on the facts alleged in his claim for libel, he likewise is not required to plead special damages in order to state a cause of action for false light invasion of privacy. The demurrer to the second cause of action was improperly sustained on the ground that plaintiff failed to allege special damages.

■ Defendant demurred to the second cause of action on the further ground that the claim for false light invasion of privacy asserted therein is, in essence, the equivalent of the claim for libel asserted in the first cause of action. If that ground is well taken the judgment of dismissal based on the order sustaining the demurrer must be affirmed as to the second cause of action. (See *Longshore* v. *County of Ventura* (1979) 25 Cal.3d 14, 21 [157 Cal.Rptr. 706, 598 P.2d 866].) Accordingly, we turn to the alternative ground of defendant's demurrer to that cause of action.

■ There is a distinction between causes of action for invasion of privacy and defamation with regard to the respective interests protected and compensated by each. "The gist of the cause of action in a privacy case is not injury to the character or reputation but a direct wrong of a personal character resulting in injury to the feelings without regard to any effect which the publication may have on the property, business, pecuniary interest, or the standing of the individual in the community. [Citations.] The right of privacy concerns one's own peace of mind, while the right of freedom from defamation concerns primarily one's reputation. [Citations.] The injury is mental and subjective." (*Fairfield* v. *American Photocopy etc. Co.* (1955) 138 Cal.App.2d 82, 86 [291 P.2d 194].) Further, the scope of an actionable invasion of privacy includes not only true but derogatory statements about an individual, but also statements that falsely attribute offensive behavior to him. (See *Gill* v. *Curtis Publishing Co.* (1952) 38 Cal.2d 273 [239 P.2d 630]; *Fellows* v. *National Enquirer, Inc., supra,* 165 Cal.App.3d 512, 519; *Kerby* v. *Hal Roach Studios, supra,* 53 Cal.App.2d 207, 210-212.) In none of the cited cases, however, was a claim for false light invasion of privacy coupled with a claim for libel.

face, which caused injury to plaintiff's peace of mind and personal feelings but did not cause special damages to his business, trade or property.

In the present case, unlike the situation in *Fellows*, the false light in which plaintiff was placed by defendant's publication appears on the face of the publication's language. Accordingly, there is even less reason here to apply section 45a's requirement of special damages to the false light claim than there was in *Fellows*.

▮▮▮ The present case is governed by *Kapellas* v. *Kofman, supra,* 1 Cal.3d 20. There the plaintiff, a candidate for the city council, sued a newspaper publisher on her behalf and on behalf of her minor children based on publication of an editorial which allegedly criticized plaintiff's qualifications as both a candidate and a mother by pointing out that her children were the frequent subjects of police reports. The complaint contained three causes of action: libel against plaintiff, libel against her children, and invasion of the children's privacy. Defendant demurred to each cause of action; the demurrer was sustained in its entirety without leave to amend and the action was dismissed. The judgment of dismissal of the first two causes of action was reversed, but the judgment was affirmed as to the third cause of action. The court stated that insofar as the claimed invasion of privacy rested on "'the unwarranted publication by defendant of intimate details of [the children's] private [lives],'" it stated a cause of action separate and distinct from the libel claim; the court, however, held that the facts of the case did not support an action for "this kind of invasion of privacy." (*Kapellas* v. *Kofman, supra,* 1 Cal.3d at pp. 35-39.) Most significantly in the context of the present action, the court added: "Insofar as the instant plaintiff's right to privacy action is of the 'false light in the public eye' variety, resting on the allegedly false nature of the editorial statements, we find the action is in substance equivalent to the children's libel claim . . . . Since the complaint contains a specific cause of action for libel, the privacy count, if intended in this light, is superfluous and should be dismissed." (*Id.,* at p. 35, fn. 16.)

Plaintiff's second cause of action clearly is based on false light invasion of privacy. It is so labeled and it incorporates all the allegations of the first cause of action (libel) including those which assert that defendant falsely attributed the statements in the article to plaintiff. The general damages sought in the cause of action for libel allegedly result from plaintiff's "loss of reputation, shame, mortification, hurt feelings, embarrassment and humiliation"; the general damages sought in the cause of action for false light invasion of privacy are based on the identical injuries except that loss of reputation is omitted. Thus, plaintiff's libel claim provides him with a complete remedy for any damages he has suffered by the publication of the article, including damages for injury to his personal feelings which are recoverable in a false light action. Under these circumstances the second cause of action is, in effect, a duplication of the first and hence must be dismissed as surplusage.

## DISPOSITION

The judgment of dismissal of the second cause of action is affirmed. The judgment of dismissal of the first cause of action is reversed with directions

to the trial court to overrule the demurrer as to that cause of action and allow defendant to answer. Plaintiff shall recover his costs on appeal.

Thompson, J., and Johnson, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 1, 1985. Kaus, J., Broussard, J., and Grodin, J., were of the opinion that the petition should be granted.