Filed 7/28/15  Tenborg v. CalCoastNews CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| CHARLES TENBORG,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CALCOASTNEWS/<br>UNCOVEREDSLO.COM LLC et al.,<br><br>    Defendants and Appellants. | 2d Civil No. B254094<br>(Super. Ct. No. CV 130237)<br>(San Luis Obispo County) |

Appellants Karen Velie and Daniel Blackburn authored a news article allegedly quoting statements purportedly made at a public meeting which accused respondent Charles Tenborg of illegally transporting hazardous waste that "exposed taxpayers to huge fines by encouraging [San Luis Obispo County] public agencies to ignore state law."  They also alleged that he had been "fired" from an earlier job with the County.  Appellant blogger CalCoastNews/UncoveredSLO.com LLC (CalCoastNews) and the authors were sued by Tenborg for libel—there was no such statement at the meeting and the allegations were "lies."  Appellants moved to strike the complaint as a strategic lawsuit against public participation (SLAPP).  (Code Civ. Proc., § 425.16.)  The trial court denied the anti-SLAPP motion.  Appellants challenge that ruling.  We affirm.

FACTS

We reproduce in relevant part the article at issue here, entitled "Hazardous waste chief skirts law." The specific statements that Tenborg identifies in his complaint as defamatory are in boldface:

"**A contractor paid more than $400,000 annually by San Luis Obispo County's Integrated Waste Management Authority (IWMA) illegally transports hazardous wastes and has exposed taxpayers to huge fines by encouraging member public agencies to ignore state law**, a *CalCoastNews* investigation shows.

"**Charles Tenborg, the IWMA's hazardous waste disposal site manager, also owns [Eco] Solutions, a private waste disposal and management company recommended as a hazardous waste transporter by the IWMA**.

"**In the mid-1990's, Tenborg was fired for undisclosed reasons from his job with the San Luis Obispo County Environmental Health Certified Unified Program Agency (CUPA)**, which licenses the five household hazardous waste facilities.

"He then formed ECO Solutions. **His relationship with the IWMA started in 1997 when he was awarded a no-bid contract by IWMA manager William Worrell for $21,000 a year to run the Household Hazardous waste facilities at Cold Canyon and Chicago Grade landfills**. Each year since, the IWMA board has voted to approve a new no-bid contract, with the latest totaling more than $400,000 for the management of the five county hazardous waste facilities.

"In a recent interview with *CalCoastNews*, Worrell said Tenborg got the no-bid contracts because he was the most qualified for the job. **However, as a public entity, the IWMA is required by law to put work of more than $15,000 out to bid and to avoid using public resources to support private business**.

"IWMA is a joint powers authority formed in 1994 to deal with state regulation of hazardous waste disposal requirements. All seven San Luis Obispo County cities, the county, and eight special districts are members, and officials of each entity are represented on its board of directors.

2

"A primary responsibility of the authority is to plan for, suggest, and offer solutions to common waste problems through the creation and management of waste and recycling facilities. Currently, the IWMA asks generators of hazardous waste to utilize its transportation services.

" 'If you are a conditionally exempt small business and generate less than 27 gallons or 220 pounds of hazardous waste per month, we can provide hazardous waste collection and disposal service for you,' the IWMA says on its website.

"However, staff at the IWMA said the public agency does not transport waste, though it does serve as a work generator for Tenborg's private transport company.

"State regulators require documentation of cradle-to-grave movement of waste materials of more than 50 pounds in any month, unless the entity is given a 'small generator' status. This is designed to prevent the illegal disposal of hazardous wastes by transporters or waste facilities that fail to properly manage the waste.

"**The city of San Luis Obispo does not haul its own hazardous waste and regularly utilizes [Eco] Solutions as a transporter, city employees said**.

"Under reporting requirements, a 'small' load of hazardous waste material—less than 220 pounds per month—can be exempted from state reporting regulations if it is hauled by a municipality itself after certification of the load's weight.

"**City employees said Tenborg encourages municipalities to ignore reporting protocols by filling out IWMA forms that allege the municipality is a small generator because it self-transports; then, Tenborg transports the loads himself in violation of state law. He charges the city $2,000 to $3,000 for each load, and takes them to one of IWMA's five household hazardous waste facilities—all managed by Tenborg**. The materials are then supposed to be transported ultimately to a hazardous waste facility like the one located near Kettleman City.

"Tenborg contends he stopped hauling hazardous waste for municipalities two years ago when IWMA manager Worrell said they needed to make sure cities claiming to be conditionally-exempt small waste generators moved their own waste.

3

"Nevertheless, employees in San Luis Obispo, one of whom said his departments did not utilize Eco Solutions, said that the city does not transport hazardous waste because of the liability involved. City officials, however, still claim conditionally-exempt small waste generator status and rarely send reports to the state.

"In this way, municipalities get bargain-basement pricing on their hazardous waste loads.

"Keeping track of the hazardous waste and assuring that it is handled properly is difficult and time-consuming.

"Data showing how much hazardous waste San Luis Obispo produces is convoluted, because the city also utilizes the services of more than 10 other haulers.

"When asked, as manager of the county's five hazardous waste facilities, how much waste the city of San Luis Obispo self-transported during the past month, Tenborg said he did not know and went on to explain what happens to waste after it arrives at the IWMA facilities.

"'**We manage it, pack it in drums and then transport it to the appropriate facility,' Tenborg said**.

"San Luis Obispo management's response to a records request for hazardous waste manifests resulted in dozens of documents bearing the names of those transporters.

"Of those manifests, only five had been sent to regulators during a three-year period of time, according to the Department of Hazardous Substance Control. Three other manifests the city delivered to regulators were not part of the city's response to *CalCoastNews*' records request—demonstrating the city's failure to properly keep records in a specific file as required by law.

"Tenborg's and Worrell's relationship dates back at least 15 years . . . ."

The remainder of the article concerns, in appellants' words, Worrell's "similarly controversial" professional history and "questionable activities."

4

DISCUSSION

"The analysis of an anti-SLAPP motion . . . involves two steps. 'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one "arising from" protected activity. ([Code Civ. Proc.,] § 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.] 'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute— i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.' [Citation.] We review an order granting or denying a motion to strike under section 425.16 de novo. [Citation.]" (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 819-820.)

The trial court found that Tenborg's cause of action arises from protected activity, a ruling he does not contest. The sole issue before us is whether he has shown a probability of prevailing on his libel claim. We conclude that he has.

In general, libel is "a written communication that is false, that is not protected by any privilege, and that exposes a person to contempt or ridicule or certain other reputational injuries." (*Shively v. Bozanich* (2003) 31 Cal.4th 1230, 1242.) To prevail on a libel claim, "the First Amendment also requires that the statement on which the claim is based must specifically refer to, or be 'of and concerning,' the plaintiff in some way."[1] (*Blatty v. New York Times Co.* (1986) 42 Cal.3d 1033, 1042.) Appellants challenge Tenborg's showing on each of these elements.

In a concise, well-reasoned decision, Judge Tangeman rejected appellants' contentions. The trial court found that the article was not protected as a matter of law by the privilege for fair and true reports of a public proceeding (Civ. Code, § 47, subds. (d), (e)) because "the . . . article makes no reference to or report of what transpired during the

---

[1] In addition, if the plaintiff is a public figure, the First Amendment requires a showing by clear and convincing evidence that the defamatory statement was made with actual malice. (*Paterno v. Superior Court* (2008) 163 Cal.App.4th 1342, 1349.) The trial court declined to consider whether Tenborg is a public figure because appellants first raised the issue in a supplemental reply brief. They do not renew that argument here. We assume for present purposes that Tenborg is not a public figure.

5

[public meeting at issue]" and there is a factual dispute about what was said there. In addition, the trial court found that Tenborg "provides sufficient evidence to establish the falsity of the statement[s]," that "a few of the statements are clearly defamatory," and that the statements were of and concerning him because "the . . . article names [him], includes his photograph, and identifies Eco Solutions as a company that [he] owns." We agree.

*Falsity*

Appellants contend that Tenborg failed to prove that most of the statements at issue were false (the exception being the statement that he was "fired" from CUPA). "'". . ."'. . . The dispositive question . . . is whether a reasonable trier of fact could conclude that the published statements imply a provably false factual assertion. [Citation.]' [Citation.]" (*Nygard, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1048.) "Minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.' [Citations.]" (*Masson v. New Yorker Magazine, Inc.* (1991) 501 U.S. 496, 517.) At the same time, "even if a statement is literally accurate, defamation may be proven if it has a false implication." (*Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 293.)

"When the speech involves a matter of public concern, a private-figure plaintiff has the burden of proving the falsity of the defamation. [Citation.]" (*Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 747.) The trial court did not, as appellants assert, "turn[] this burden on its head . . . by rejecting [their] anti-SLAPP motion because the court was unable to determine 'that all the alleged defamatory statements are true.'" The trial court acknowledged that "[t]he burden is on a plaintiff . . . to proffer a prima facie showing of facts supporting a judgment in plaintiff's favor." It cited falsity as one of the "essential elements" of defamation and explained that "[Tenborg] must establish . . . that the statements are false." Tenborg provided evidence of falsity, which appellants attempted to refute with conflicting evidence. Because the trial court found that "[t]here is substantial evidence to support [his] allegations which, if believed, would support a finding of liability," it could not "determine, as a matter of law on this motion,

6

that all the alleged defamatory statements are true." This analysis was sound. (See *Hawran v. Hixson*, *supra*, 209 Cal.App.4th at p. 293 [performing similar analysis].)

Appellants argue that Tenborg's evidence was insufficient because "it did not establish that the 'gist' and 'sting' of each of the statements at issue was false." We disagree. The "gist" and "sting" of the statements are that Tenborg "illegally transports hazardous wastes" and "encourages municipalities to ignore reporting protocols" required by state law. To show the falsity of these statements, Tenborg submitted declarations stating that neither he nor Eco Solutions ever illegally transported or dumped hazardous waste, that he was properly licensed and registered with the state to transport hazardous waste at all times, and that he stopped hauling hazardous waste for the IWMA more than two years before the article was published. In addition, he stated that when he transported hazardous waste from entities designated as conditionally-exempt small quantity generators (CESQGs) on the IWMA's behalf, the entities self-certified their status as CESQGs and he never encouraged them to violate state law. He also submitted evidence of the hazardous materials endorsement on his driver's license, letters from the Transportation Security Administration confirming that he met the requirements for the endorsement, and registrations with the California Department of Toxic Substances Control.

To controvert this evidence, appellants submitted a declaration of a former Eco Solutions employee, Aaron Wynn, who claims to have seen Tenborg and other Eco Solutions employees illegally transporting and disposing of hazardous waste. In a supplemental declaration, Tenborg disputes Wynn's account. Given that Wynn was fired for reasons that "did not make sense to [him]" and was denied a license to transport hazardous waste because of "an incident on [his] record where the authorities thought [he] was transporting a pipe bomb," the trier of fact might not credit his testimony. "This sort of factual dispute is one that we do not resolve on [appellants'] section 425.16 special motion to strike." (*Hawran v. Hixson*, *supra*, 209 Cal.App.4th at p. 293.)

Appellants' other evidence, an IWMA form that purportedly shows "an indisputable violation of the small quantity hazardous waste generator requirements,"

7

does not even call Tenborg's evidence into question. The form, a "CESQG Data Sheet & Waiver," contains a statement signed by the City of San Luis Obispo certifying that the City "generates no more than 100 kilograms (27 gallons or 220 pounds) of hazardous waste per month based on an annual average." The "Inventory" section, signed by Tenborg, lists 31 gallons of latex paint, four gallons of batteries, and various lamps. Latex paint is not inherently a federally regulated hazardous waste that would affect a CESQG's classification.[2] (Health & Saf. Code, § 25218.1, subd. (a); 40 C.F.R. §§ 261.5(a) (2010), 261.3 (2014).) Batteries and lamps are generally considered "universal waste" and as such are not counted in the monthly limit on hazardous waste from CESQG entities. (40 C.F.R. §§ 261.5, subd. (c)(6), 261.9, subds. (a), (d).) Thus, none of the waste listed on the IWMA form is incompatible with the City of San Luis Obispo's lawful self-certification as a CESQG.

The trial court properly found that Tenborg's evidence was sufficient to prove falsity.

### *Privilege*

Appellants contend that the statements at issue are privileged under subdivisions (d) and (e) of section 47 of the Civil Code, which provide absolute immunity for "a fair and true report" of a public proceeding.[3] (Civ. Code, § 47, subds. (d), (e); see *McClatchy Newspapers, Inc. v. Superior Court* (1987) 189 Cal.App.3d 961,

---

[2] Latex paint may qualify as hazardous waste if it contains toxic substances. For instance, until 1990 mercury was commonly added to latex paint as a preservative and fungicide. (See Stephen M. Jasinski, U.S. Dept. of the Interior, Bur. of Mines, The Materials Flow of Mercury in the United States (1994) p. 17 <http://pubs.usgs.gov/ usbmic/ic-9412/mercury.pdf> [as of June 12, 2015].) Here, nothing on the form indicates that the latex paint contained a substance rendering it hazardous waste.

[3] The differences between these two subdivisions are irrelevant here. Subdivision (d) provides immunity for "a fair and true report in . . . a public journal, of [a] public official proceeding, or . . . of anything said in the course thereof," so long as the report does not violate Rule 5-120 of the State Bar Rules of Professional Conduct, a court order, or any confidentiality requirement imposed by law. Subdivision (e) provides immunity for "a fair and true report of (1) the proceedings of a public meeting, if the meeting was lawfully convened for a lawful purpose and open to the public, or (2) the publication of the matter complained of was for the public benefit." It is undisputed that the public proceeding at issue was lawfully convened for a lawful purpose, that it was open to the public, and that no legal or ethical duty prevented appellants from reporting on it.

974.)  They assert that the subject of Tenborg illegally transporting hazardous waste without a license was brought up at a meeting of the San Luis Obispo Stormwater Management Team held on January 12, 2010.

Appellants are not entitled to have Tenborg's defamation claim stricken on the basis of privilege.  First, there is a factual dispute whether the article is a "fair and true report" of the Stormwater Management Team meeting.  Appellants, supported by the declaration of former city employee Douglas Dowden, assert that during the meeting team member Kerry Boyle "informed the group that Eco Solutions had not been properly licensed to haul hazardous waste, even though it was transporting hazardous waste for the City [of San Luis Obispo]."  They also rely on "Meeting Notes" that state, "Eco-Solutions no longer licensed to haul . . . ."  Boyle denies making this statement and "do[es] not recall anyone else making [this] or similar statements at that meeting."**4**  Because the basis of appellants' entitlement to privilege turns on a disputed fact—whether their report is "fair and true"—it cannot be decided in a ruling on an anti-SLAPP motion.  (See *Jennings v. Telegram-Tribune Co.* (1985) 164 Cal.App.3d 119, 128, italics omitted ["'[T]he fairness of the report is a question of fact for the jury'"].)

Second, appellants are not entitled to section 47 privilege as a matter of law because their article in no way conveyed that they were reporting on a public meeting.  To the contrary, the article suggests in its opening paragraph that it is the product of "a *CalCoastNews* investigation."  (See *Hawran v. Hixson*, *supra*, 209 Cal.App.4th at pp.

---

**4** At oral argument, appellants' counsel asserted that Boyle's declaration is "very carefully written in how [he] den[ies] what was said at the meeting" and "leaves open the question of whether something similar was said there."  Not so.  Boyle's denial is categorical:  "I did not make these statements at the January 12, 2010 [Stormwater] Management Team meeting, or anywhere else, ever.  I also do not recall anyone else making these or similar statements at that meeting.  At a recent meeting of the same Stormwater Management Team, in early October 2013, we discussed the comment attributed to me regarding the status of Mr. Tenborg's license.  Nobody remembered that statement being made, nobody knew where it came from, and nobody knew what to make of it.  So I want to confirm very strongly and with 100% certainty that I never made that statement, it was not made at the January meeting,—basically, I believe the statement as written is a false or inaccurate statement."

9

280-281 [privilege did not apply where publication did not "report on, summarize or describe the SEC proceeding or investigation, the history of the SEC proceeding or investigation, or any communications made 'in the course of' that investigation" but rather "report[ed] the results and consequences of [the defendant's] own internal investigation"].)  "'The fair report privilege is required because of the public's need for information to fulfill its supervisory role over government.  Thus, reports of official proceedings are not privileged "merely to satisfy the curiosity of individuals," but to tell them how their government is performing. . . .'"  (*McClatchy Newspapers, Inc. v. Superior Court*, *supra*, 189 Cal.App.3d at pp. 974-975.)  Here, however, the article neither mentions nor references the Stormwater Management Team meeting.  As the trial court found, "a reader of the article would have no understanding that the article was a report on what took place at the meeting."  The privilege for fair and true reports is inapplicable.  (See *Hayward v. Watsonville Register-Pajaronian and Sun* (1968) 265 Cal.App.2d 255, 259 ["[I]n order to qualify as privileged . . . an article must state the source of its information"].)

### *Defamatory Meaning and Special Damages*

Appellants assert that several of the statements at issue are not reasonably susceptible of a defamatory meaning or that Tenborg failed to prove specific statements damaged him.  Although appellants conflate two separate elements, underlying both of their contentions is their position that "each statement should have been independently evaluated" as to whether it supported a claim for libel and, if not, stricken.  This is incorrect.  "The publication in question may not be divided into segments and each portion treated as a separate unit; it must be read as a whole in order to understand its import and the effect that it was calculated to have on the reader, and construed in the light of the whole scope and apparent object of the writer, considering not only the actual language used, but the sense and meaning that may be fairly presumed to have been conveyed to those who read it.  [Citation.]"  (*Selleck v. Globe International, Inc.* (1985)

10

166 Cal.App.3d 1123, 1131; see *Oasis West Realty, LLC v. Goldman*, *supra*, 51 Cal.4th at p. 820 ["If the plaintiff 'can show a probability of prevailing on *any part of its claim*, the cause of action is not meritless' and will not be stricken; 'once a plaintiff shows a probability of prevailing on any part of its claim, the plaintiff *has established* that its cause of action has some merit and the entire cause of action stands'"].)[5]

We agree with the trial court that "the statements that [Tenborg] illegally transported hazardous waste and encouraged public agencies to ignore state law would injure [him] with respect to his profession as an environmental contractor." Consequently, these statements were "libelous per se, and actionable without proof of special damage." (*Burrill v. Nair* (2013) 217 Cal.App.4th 357, 382.)

### *"Of and Concerning" Tenborg*

Appellants argue that three of the 11 statements at issue are not "of and concerning" Tenborg. As we have explained, the proper focus is on the article as a whole rather than on specific statements within the article. The entire first half of the article is about Tenborg and his "controversial" professional history. Determining whether each of

---

[5] Appellants point out that the Supreme Court has recently taken up the issue of whether "the anti-SLAPP statute can be used to strike nonmeritorious allegations of protected activity within an entire cause of action." (*Baral v. Schnitt* (2015) 233 Cal.App.4th 1423, 1437, review granted May 13, 2015, S225090.) Regardless of how the Supreme Court resolves *Baral*, the case is distinguishable in that it involved *separable* allegations of protected activity. After the trial court in *Baral* struck two defamation causes of action based solely on allegations regarding privileged communications made in a prelitigation fraud investigation, the plaintiff amended the complaint and included the same allegations in otherwise colorable causes of action for breach of fiduciary duty, constructive fraud, and declaratory relief. (*Id.* at p. 1430.) *Baral* held that the anti-SLAPP statute could not be used to selectively strike the allegations of privileged activity. (*Id.* at p. 1443.) Here, in contrast, there was of necessity only a single, indivisible cause of action for libel. (See Civ. Code, § 3425.3 ["No person shall have more than one cause of action for damages for libel . . . founded upon any single publication"].) If appellants maintain that certain statements in the article neither directly defame Tenborg nor contextualize the defamatory nature of the article as a whole, they can move in limine to exclude the statements as irrelevant. Using an anti-SLAPP motion in this way serves no purpose.

11

the three statements flagged by appellants are "of and concerning" Tenborg would be a pointless endeavor.

DISPOSITION

The judgment is affirmed.  Costs to respondent.

<u>NOT TO BE PUBLISHED.</u>

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

12

Martin J. Tangeman, Judge

Superior Court County of San Luis Obispo

_____


Davis Wright Tremaine, Thomas R. Burke, Rochelle L. Wilcox and Jeanne M. Sheahan for Defendants and Appellants.

Kerr & Wagstaffe, James M. Wagstaffe and Kevin B. Clune for Plaintiff and Respondent.